574 So.2d 1376 (1991)
Mary Joann F. LAWRENCE
v.
Randy Farrell LAWRENCE.
No. 90-CA-0305.
Supreme Court of Mississippi.
January 23, 1991.
*1377 Alice Dale Goodsell, Jackson, for appellant.
Lee B. Agnew, Agnew & Associates, Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and PITTMAN, JJ.
PITTMAN, Justice, for the Court:
Joann Lawrence and Randy Lawrence, parents of two children, were divorced on May 21, 1984, on the ground of irreconcilable differences. Over five years later, Joann Lawrence moved to modify the final divorce decree, alleging that there had been a material change in circumstances since 1984 and the child support which Randy Lawrence had been paying had become inadequate. Randy Lawrence answered and counterclaimed for more authority in the decisions involving the children's health and education. The chancery court found that there had been no substantial change in circumstances which would allow a modification *1378 in the final decree. The court also found that Joann Lawrence was bound by the agreement, which provided that child support should end for each of the children at age eighteen. The court granted Randy Lawrence's counterclaim. Joann Lawrence appeals, assigning as error:
I. WHETHER AN AGREEMENT FOR CHILD SUPPORT TO CEASE AT AGE EIGHTEEN, PURSUANT TO AN AGREEMENT OF THE PARTIES WHICH WAS INCORPORATED INTO AND MADE A PART OF A FINAL DECREE OF DIVORCE ON THE GROUNDS OF IRRECONCILABLE DIFFERENCES, IS BINDING ON THE COURT AND ON THE CUSTODIAL PARENT, THEREBY CUTTING OFF THE COURT'S POWER TO MODIFY THE DECREE TO INCLUDE CHILD SUPPORT FOR A CHILD WHO IS OVER EIGHTEEN, BUT UNDER TWENTY-ONE YEARS OF AGE, IS A COLLEGE STUDENT, AND DOING WELL IN SCHOOL; WHETHER THE COURT SHOULD HAVE CONSIDERED THIS FACT IN DETERMINING IF THERE HAD BEEN A MATERIAL CHANGE IN CIRCUMSTANCES SUFFICIENT TO SUPPORT A MODIFICATION OF CHILD SUPPORT.
II. WHETHER THE COURT WAS MANIFESTLY IN ERROR IN DISMISSING THE MOTION FOR MODIFICATION OF FINAL DECREE ON THE BASIS THAT THERE HAD BEEN NO MATERIAL CHANGE IN THE CIRCUMSTANCES OF THE PARTIES SINCE THE ENTRY, OF THE FINAL DECREE, WHERE A DAUGHTER WHO WAS FOURTEEN AT THE TIME OF THE DECREE IS NOW TWENTY, ENROLLED IN COLLEGE AND MAKING A'S; WHERE A SON WHO WAS NINE AT THE TIME THE DECREE WAS ENTERED IS NOW FIFTEEN AND READY TO BEGIN HIGH SCHOOL; AND WHERE THE NEEDS OF BOTH CHILDREN HAVE INCREASED SIGNIFICANTLY, ACCORDING TO UNDISPUTED TESTIMONY.
III. WHETHER THE COURT SHOULD ADOPT A RULE THAT THE EFFECTIVE DATE OF A MODIFICATION OF CHILD SUPPORT PAYMENTS SHOULD BE THE DATE THE MOTION TO MODIFY IS FILED WHERE IT APPEARS THE INCREASED NEEDS OF THE CHILD, OR CHILDREN, EXISTED AS OF THAT DATE.
Joann Lawrence (Joann) and Randy Lawrence (Randy) were divorced on May 21, 1984, on the ground of irreconcilable differences. Two children were born of the marriage: Kim, who was fourteen at the time of the divorce; and Ben, who was nine. An agreement, which provided for care and custody of the children and the settlement of the property rights of the parties, was attached to and made a part of the final decree of divorce. The agreement provided that Randy Lawrence should pay monthly child support in the amount of $150.00 per child, "until such time as said children shall reach the age of 18 years or otherwise become emancipated or self-supporting." There were other matters agreed to which they are not pertinent to this opinion.
On September 28, 1989, Joann Lawrence moved to modify the final decree, alleging that there had been a substantial change in circumstances since 1984. The alleged changes included: Kim, 19, was a sophomore at the University of Southern Mississippi, majoring in engineering; Ben, 15, needed special tutoring which cost $210.00 per month; the children's needs, and attendant expenses, had risen as they had grown older; Randy Lawrence, single with no other children, had received pay increases since the final decree, and was also working at an extra job. Joann asked that Randy's child support obligation be raised to 25% of his gross monthly pay; that he be required to pay 1/2 of college tuition, books and incidental expenses for the children, including the special tutoring for *1379 Ben; that he pay certain outstanding medical bills per the original agreement; and that "he should be required to pay child support and education expenses, as outlined above, together with medical, dental and drug bills as called for in the Final Decree, until the minor children reach the age of twenty-two years, or otherwise become emancipated or self-supporting, provided, however, that they are still in school and making their grades."
Randy Lawrence filed an answer and counterclaim on October 24, 1989, denying that any relief was due his ex-wife.
The hearing in this cause was held on January 19, 1990. Joann and Randy Lawrence were the only witnesses. Joann had an adjusted monthly gross income of $2,448.74. Joann owned an undivided 1/2 interest in a home that she shared with her mother. She also held a second mortgage on another home, and received as a result a monthly payment of $157.77. Joann owned one car, a 1989 Hyundai Excel, which Kim used exclusively. Joann made all the car and insurance payments. According to Joann, Kim's expenses had increased significantly since 1984. Along with the car payment, $185.00 per month, and the car insurance, Joann also paid $550.00 per semester for tuition, plus books and incidental college expenses. Kim received $250.00 or $275.00 per semester via a Pell Grant. Joann had also co-signed with Kim a low interest loan, approximately $1100.00 per semester, to pay what the Pell Grant did not. As for Ben, and how his needs had increased, Joann testified: "Well, he's fifteen, and so his clothes are a lot more expensive and his entertainment needs are a lot more expensive. He just got his driver's license. He wants to be insured to drive a car. And everything for him costs a lot more money now." Joann was aware of Randy giving Kim $100.00/month since he had stopped paying the child support to her (Joann). Joann had no objection to Randy being involved in the discussion of the future of the children.
Randy Lawrence, a sergeant in the patrol division of the Jackson Police Department, was a seventeen-year veteran of the police force. He received a regular gross salary of $2381.00. He had also been receiving as much as $750.00 a month in overtime. He also testified that he had been able to hold down a second job as a security guard for Ramada Inns. Randy had earned $321.00 on the extra job from June until November 1989. Randy was single and lived in his own home, which was worth approximately $73,000.00. The loan balance on the home was approximately $57,000.00. His monthly payment was $610.00, including tax and insurance.
Randy denied that he had terminated child support for Kim after she had reached age eighteen and that instead of paying it to Joann, he paid $100.00 in cash each month directly to Kim, and placed $50.00 per month in an account for her to use as ready cash. Both Randy's and Kim's names were on the account. He understood that this support was strictly voluntary, and he could stop paying it at any time.
In addition to these funds, Randy said that he had given Kim $100.00 at the beginning of the fall semester, that he contributed to various clothing purchases, and every few weeks he sent her a "care package" full of groceries and other essentials. He also claimed that he had bought a used car for Kim in 1985, for which he had paid approximately $3,000.00. Because Kim was a minor, he had placed the car in Joann's name and had given her the title. This used car had been used as a trade-in on the Hyundai Excel mentioned earlier. Randy testified that he had very little contact or visitation with either of his children, but he did not blame this on his ex-wife. He also stated that there were important decisions involving the children's health and finances that he would like to have been consulted on, although there didn't seem to be any decisions he particularly disagreed with.
The chancery court dismissed Joann Lawrence's motion to modify. In doing so it made the following findings:
The Court finds that the Plaintiff is bound by her agreement that support for the two minor children cease at age eighteen. *1380 At the time the agreement was signed, it either was anticipated or should have been anticipated that one or both of these children would want to go to college and that there would be increased expenses at that point. Therefore, support for the twenty year old daughter terminated at age eighteen and no provision was made in the agreement for college.
The Court finds that there has been no material change in circumstances sufficient to warrant an increase in child support. There was almost no testimony about the increased costs for Ben, the son, and the additional education of the daughter, as previously mentioned, should have been anticipated.
The Court grants the stipulated portion of the counterclaim as follows: The parties shall exchange information with each other with regard to the minor child's education, grades, health and other similar matters, affecting the said child. The custodial parent shall have final authority on all decisions affecting the care of said child.
Joann Lawrence appeals from this judgment.

I. WHETHER AN AGREEMENT FOR CHILD SUPPORT TO CEASE AT AGE EIGHTEEN, PURSUANT TO AN AGREEMENT OF THE PARTIES WHICH WAS INCORPORATED INTO AND MADE A PART OF A FINAL DECREE OF DIVORCE ON THE GROUNDS OF IRRECONCILABLE DIFFERENCES, IS BINDING ON THE COURT AND ON THE CUSTODIAL PARENT, THEREBY CUTTING OFF THE COURT'S POWER TO MODIFY THE DECREE TO INCLUDE CHILD SUPPORT FOR A CHILD WHO IS OVER EIGHTEEN, BUT UNDER TWENTY-ONE YEARS OF AGE, IS A COLLEGE STUDENT, AND DOING WELL IN SCHOOL; WHETHER THE COURT SHOULD HAVE CONSIDERED THIS FACT IN DETERMINING IF THERE HAD BEEN A MATERIAL CHANGE IN CIRCUMSTANCES SUFFICIENT TO SUPPORT A MODIFICATION OF CHILD SUPPORT.
The chancellor found that Joann Lawrence was bound by the agreement which had been incorporated into the final decree. He specifically found that "it was anticipated or should have been anticipated that one or both of these children would want to go to college and that there would be increased expenses at that point."
Divorces on the ground of irreconcilable differences are governed by Miss. Code Ann. § 93-5-2 (Supp. 1989), which states in part:
Divorce from the bonds of matrimony may be granted on the ground of irreconcilable differences, but only upon the joint bill of the husband and wife or a bill of complaint where the defendant has been personally served with process or where the defendant has entered an appearance by written waiver of process. No divorce shall be granted on the ground of irreconcilable differences unless the court shall find in its decree that the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties. The agreement may be incorporated in the decree, and such decree may be modified as other decrees for divorce.

When § 93-5-2 has been complied with, "the custody, support, alimony and property settlement agreement becomes a part of the final decree for all legal intents and purposes." Switzer v. Switzer, 460 So.2d 843, 845 (Miss. 1984). Thus the agreement, as part of the final decree, may be modified if Joann Lawrence can show "a substantial or material change in the circumstances of one or more of the interested parties: the father, the mother, and the child or children, arising subsequent to the entry of the decree to be modified." Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983).
*1381 The chancellor found that the agreement was binding because it should have been anticipated that one or both of the children in question would attend college. This Court did state, in Morris v. Morris, 541 So.2d 1040, 1043 (Miss. 1989), that the material or substantial change in circumstances necessary to modify a support agreement should not be something "anticipated at the time of the entry of the original decree." (quoting Trunzler v. Trunzler, 431 So.2d 1115, 1116 (Miss. 1983)). Morris involved a motion to modify brought five months after the divorce was granted, based on circumstances known to the moving party at the time of the final decree. Few if any parents can anticipate with certainty, five years ahead of time, that their children will attend college. There is no testimony in this record about the educational background or tradition of these two parents. The rationale of Morris is not applicable here.
There is another question here, apparently of first impression, as to whether the noncustodial parent can contract, under § 93-5-2, to end child support before his or her child reaches majority. Both parties cite Nichols v. Tedder, 547 So.2d 766, 770 (Miss. 1989), which stated that "it is well recognized that a parent is relieved of the legal duty to support their child once the child is emancipated, by attaining the age of majority or otherwise." Nichols found that this age of majority, for purposes of child care and maintenance orders issued pursuant to §§ 93-5-23 and 93-11-65, was twenty-one (21). Nichols did not mention § 93-5-2, though it did recognize the ability of parents to contract to provide support beyond the age of 21. Nichols, 547 So.2d at 770. This Court did state, in Calton v. Calton, 485 So.2d 309, 310 (Miss. 1986), that "[t]he duty to support children is a continuing duty on both parents and is a vested right of the child. Applying [this principle], it follows that parents cannot contract away rights vested in minor children. Such a contract would be against public policy." A limited exception is a paternity action such as found in Atwood v. Hicks by Hicks, 538 So.2d 404 (Miss. 1989).
To hold that a parent may contract to cut off child support at age 18 would conflict with the language of § 93-5-2 and the public policy supporting it. See Bell v. Bell, 572 So.2d 841 (Miss. 1990) (provision of divorce decree mandating children's residence in certain town until children reach majority is unenforceable). We do acknowledge that a child may not have a right to support to age 21, depending on the acts or activity of the child, but certainly parents cannot by contract terminate any of the rights of the child. It is accepted that an agreed final decree may be modified. Further, while a property settlement, judicially approved, is always given great weight by this Court, the agreement and weight given may not extinguish the rights of a minor child and cut off child support prior to emancipation, all to the detriment and interest of the child. As the Court stated in Cumberland v. Cumberland, 564 So.2d 839, 847 (Miss. 1990), "[c]hild support is awarded to the custodial parent for the benefit and protection of the child. Child support benefits belong to the child, and not the parent who, having custody, receives such benefits under a fiduciary duty to hold and use them for the benefit of the child." We hold that a child support agreement, submitted to the court pursuant to § 93-5-2, which ends support for a child before that child reaches the age of twenty-one or is otherwise emancipated, is unenforceable as to the rights of the child.

II. WHETHER THE COURT WAS MANIFESTLY IN ERROR IN DISMISSING THE MOTION FOR MODIFICATION OF FINAL DECREE ON THE BASIS THAT THERE HAD BEEN NO MATERIAL CHANGE IN THE CIRCUMSTANCES OF THE PARTIES SINCE THE ENTRY OF THE FINAL DECREE, WHERE A DAUGHTER WHO WAS FOURTEEN AT THE TIME OF THE DECREE IS NOW TWENTY, ENROLLED IN COLLEGE AND MAKING A'S; WHERE A SON WHO WAS NINE AT THE TIME THE DECREE WAS ENTERED IS NOW FIFTEEN AND READY TO *1382 BEGIN HIGH SCHOOL; AND WHERE THE NEEDS OF BOTH CHILDREN HAVE INCREASED SIGNIFICANTLY, ACCORDING TO UNDISPUTED TESTIMONY.
The chancery court found no material change in circumstances warranting an increase in support for either child. The rationale for its finding concerning Ben was insufficient evidence of such a change; its rationale for Kim was that the change was one that should have been anticipated, as mentioned earlier. These findings are viewed under the manifest error/substantial evidence rule. Clark v. Myrick, 523 So.2d 79, 80-81 (Miss. 1988).
This Court recently, in Nichols v. Tedder, offered a detailed discussion on the kinds of support which may be sought or paid pursuant to §§ 93-5-23 and 93-11-65. Once again, Nichols does not mention § 93-5-2, but the discussion would be applicable to an irreconcilable differences divorce. The Court stated:
An order issued under the authority of [§§ 93-5-23 or 93-11-65] dealing with the care and maintenance of children of the marriage may, and often does, provide for the payment of several distinct types of expenses. The phrase "child support" is often used to describe all of these distinct expense payments. However, under the above cited code sections, regular child support is but one type of expense which the court may award for the care and maintenance of children.
In the context of child care and maintenance orders, regular child support refers to the sums of money which the particular parent is ordered to pay for the child's basic, necessary living expenses, namely food, clothing, and shelter. Other sums which a parent may be ordered to pay for the care and maintenance of the child are the expenses of a college, or other advanced education. As noted in Duett v. Duett, 285 So.2d 140 (Miss. 1973), the statute authorizing the court to enter decrees providing for the care and maintenance of the children is "susceptible of an interpretation to allow" the court to order the payment of expenses for a college education. 285 So.2d at 142, quoting Pass v. Pass, 238 Miss. 449, 458-59, 118 So.2d 769, 773 (1960). Whether in fact a parent will be ordered to pay or contribute to the expenses of a college or other advanced education is controlled by an application of the principles set forth in Rankin v. Bobo, 410 So.2d 1326 (Miss. 1982), Hambrick v. Prestwood, 382 So.2d 474 (Miss. 1980), and Pass v. Pass, supra.

Nichols, 547 So.2d at 768-69. Though college expenses are not technically "child support", a parent may be ordered by the court to pay them. A parent may also be ordered to pay some portion of the resulting expenses of college, in addition just to tuition. Wray v. Langston, 380 So.2d 1262, 1264 (Miss. 1980).
The pertinent analysis involves a twostep process: (1) was there a material change of circumstances concerning mother, father or child, and; (2) does the child qualify for entitlement to college support under Rankin and Hambrick?
Factors which may be considered in finding financial change include:
(1) increased needs caused by advanced age and maturity of the children (2) increase in expenses, and (3) inflation factor. Other factors include (4) the relative financial condition and earning capacity of the parties, (5) the health and special needs of the child, both physical and psychological, (6) the health and special medical needs of the parents, both physical and psychological, (7) the necessary living expenses of the father, (8) the estimated amount of income taxes the respective parties must pay on their incomes, (9) the free use of a residence, furnishings, and automobile and (10) such other facts and circumstances that bear on the support subject shown by the evidence. This Court has recognized, however, that a standard of living cannot be imposed upon a father beyond his financial ability to provide. Nor can a court relieve a mother of her obligation to support because she is not now required to work because of a new husband's financial means.
*1383 Adams v. Adams, 467 So.2d 211, 215 (Miss. 1985) (citations omitted).
The pertinent factors relating to Kim are: there has been a five-year period since the original decree, with rises in expenses and inflation; Kim is now a sophomore at USM, getting along with a Pell Grant, a low interest loan co-signed by her mother, and $550.00 per semester from her mother, with total expenses or assets (not clear from the record) of about $2,000.00 per semester. Joann had a monthly gross income of $2,448.74, but there is nothing in the record concerning her income at the time of the original decree; Randy testified to a gross monthly salary of $2,381.00, but also testified that after withholdings his net salary was approximately $1200.00, as opposed to monthly expenses of $1625.00; Randy testified that he had not received a raise in the years since the original decree, and that two sources of supplemental income, overtime and a second job, were no longer available. Both parents owned a home, either a 1/2 interest (Joann) or an entire interest (Randy).
The chancery court below must review the evidence concerning material change under the view that the agreement which ends Kim's support at age eighteen is unenforceable. A separate matter is whether Kim meets the requirements of Hambrick v. Prestwood:
The duty of a father to send a child to college, under the circumstances of this case, is not absolute. It is dependent, not only on the child's aptitude and qualifications for college, but on whether the child's behavior toward, and relationship with the father, makes the child worthy of the additional effort and financial burden that will be placed on him.
Hambrick, 382 So.2d at 477. Kim did not testify, but both her parents testified that she was doing well in school. Randy Lawrence testified that his relationship with his daughter was a good one, although he seemed a bit disappointed she did not spend more time with him. Certainly the circumstances which prevented the child in Hambrick from receiving money for college, a dislike for the father which bordered on hatred, are not present in the case sub judice.
The payment of the agreed $150 per month on behalf of Kim Lawrence should be reinstated and full credit given for any monies paid directly to Kim or placed in her account for her use. The case sub judice is reversed and remanded for the court below to consider the material change petition.
As for Ben, there is very little testimony in this record. Joann Lawrence testified that Ben was "fifteen, and so his clothes are a lot more expensive and his entertainment needs are a lot more expensive. He just got his driver's license. He wants to be insured to drive a car. And everything for him costs a lot more money now." Joann also testified to Ben attending Sylvan Learning Center, some kind of special education facility, with the cost being $210.00 per month. Apparently Randy paid half of this amount. There appears to be nothing in the briefs or the record as to how long Ben stayed in Sylvan, and how long the $210.00 payments were made. Randy testified that Joann took Ben out of the facility, and that he was surprised at how well Ben was doing in school. The same inflation factor, the same presumption of expenses rising with age, and the same parental income factors apply to Ben as well as Kim. They are key factors that seem to be recognized with something akin to judicial notice. Bracey v. Bracey, 408 So.2d 1387, 1390 (Miss. 1982); Tedford v. Dempsey, 437 So.2d 410, 419 (Miss. 1983). The record is sparse as to Ben, but on remand, the facts and his needs may be more fully considered.

III. WHETHER THE COURT SHOULD ADOPT A RULE THAT THE EFFECTIVE DATE OF A MODIFICATION OF CHILD SUPPORT PAYMENTS SHOULD BE THE DATE THE MOTION TO MODIFY IS FILED WHERE IT APPEARS THE INCREASED NEEDS OF THE CHILD, OR CHILDREN, EXISTED AS OF THAT DATE.
Joann Lawrence finally argues that the modification in child support that she *1384 should have been given by the chancery court should take effect at the time the motion to modify is filed. Joann relies on three Florida cases: Friedman v. Friedman, 307 So.2d 926 (Fla. Dist. Ct. App. 1975); Shufflebarger v. Shufflebarger, 460 So.2d 982 (Fla. Dist. Ct. App. 1984); Waldman v. Waldman, 520 So.2d 87 (Fla. Dist. Ct. App. 1988). Randy Lawrence relies on Cumberland v. Cumberland, 564 So.2d 839 (Miss. 1990), which involved a reduction in child support. Mr. Cumberland asked, and the chancery court agreed, that his reduction in child support should be made retroactive to July 1, 1987, which was approximately the time he filed his motion to modify. This Court reversed, finding that "the payments that accrued during the pendency of litigation were nevertheless vested the same as any others." Cumberland, 564 So.2d at 847 (relying on Thurman v. Thurman, 559 So.2d 1014 (Miss. 1990)). This Court found that Mr. Cumberland was obligated to pay his support at the original rate up through and including the final judgment in the chancery court, adding:
The rationale behind this view is not difficult to divine. No party obligated by a judicial decree to provide support for minor children may resort to self help and modify his or her obligation with impunity. The interest of children weighs in the judicial mind far heavier than those of either parent. More pragmatically, the view adopted by the Court below and for which [Mr. Cumberland] argues could prove counterproductive and an inducement to delay. The rule we announced in Thurman and reaffirm today provides sharp incentives for one who would have his support obligation reduced to bring the matter to trial as expeditiously as possible. Here it is quite possible that, had [Mr. Cumberland] known he could obtain no forgiveness of any part of his child support obligation short of a hearing, he might have pretermitted some of his tactical maneuvers which only served to fuel the fires and delay the final decree.
Cumberland, 564 So.2d at 847.
The principle stated by the Florida cases, or something similar to it, has been adopted in several jurisdictions. See, e.g., Towne v. Towne, 150 Vt. 286, 552 A.2d 404 (1988) (retroactive modification may be allowed as of any reasonable date on or after the date of the filing of the motion to amend the support order, within the sound discretion of the trial court). Cumberland is not controlling, as the same fears of dilatory conduct and self help would be better addressed by having the modification, or increase in support, begin at the time of the filing of the petition to modify. We find that the better rule is to allow modification amounting to an increase in support as of the date of the petition to modify or thereafter, within the sound discretion of the trial court. The judgment of the chancery court is reversed and remanded, concerning both children, as to whether a material change in circumstances has occurred which would entail a modification in support. The holding of the court, that parents may contract to end child support at age eighteen, is reversed and rendered.
REVERSED AND REMANDED IN PART, REVERSED AND RENDERED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.