GRIFFIS, P.J., for the Court:
¶ 1. This case considers a contempt judgment entered against Donald Brewer. Brewer argues that the chancellor was in error when he entered a judgment that held Brewer in contempt and ordered him to pay his former wife, Penny Holliday, $34,515 for obligations owed under the divorce judgment, attorney’s fees of $3,500, and court costs of $110. On appeal, Brewer claims that the chancellor was in error when he: (1) refused to enter an “Agreed Order” that resulted from mediation in 2006, and (2) found Brewer in willful contempt for failure to pay child support. We find no error and affirm.
FACTS
¶ 2. Brewer and Holliday were married from May 31, 1985, through June 7, 2005. Two children were born during the mar *143 riage, John Andrew Brewer and Sheldon Cole Brewer. As part of their irreconcilable-differences divorce, Brewer and Holli-day signed a property settlement agreement. The agreement awarded Holliday physical custody of both children and set Brewer’s child-support obligation at $1,185 per month. Child support was to continue “until the youngest child reache[d] the age of twenty-one (21) or otherwise becfame] emancipated.”
¶ 3. Shortly after the divorce, their oldest child, John, moved in with Brewer. Brewer continued paying child support.
¶ 4. In August 2005, Brewer filed a complaint for citation for contempt of court and for modification. In the complaint, Brewer claimed there was a material change in circumstances that adversely affected the children. Specifically, Brewer alleged that a convicted felon lived with Holliday and Sheldon. Brewer asked the court to award him custody of the children and terminate his child-support obligation.
¶ 5. In October 2005, Holliday filed an answer and a counterclaim. She alleged that Brewer was an alcoholic, left John unsupervised, and assaulted Holliday. Holliday’s counterclaim included a statement signed by Holliday, Brewer, and John. The statement acknowledged that John was living with Brewer, but Holliday had not given up primary care and custody of John. The statement read: “Child support will continue as per the terms and conditions of the Final Decree of Divorce. ... If any legal action is taken by either parent to get primary custody or amend the child support order, then John A. Brewer will return to the care of his mother until the matter is resolved.” The trial date was continued several times in 2005 and 2006.
¶ 6. On July 7, 2006, Holliday and Brewer engaged in a voluntary mediation. At the conclusion of mediation, the parties signed an agreed order and a memorandum of understanding. However, the agreed order was never presented to the chancellor to be approved or entered. The agreed order gave Holliday continued custody of Sheldon and gave Brewer custody of John. The agreed order also reduced Brewer’s child support obligation to $600 per month until Sheldon was emancipated.
¶ 7. According to Brewer, he and Holli-day began to act in accordance with the agreed order’s terms. John continued to live with Brewer, and Brewer paid $600 a month in child support. Holliday filed her contempt action in August 2006, the first month Brewer paid $600. Holliday argues that she withdrew from the agreed order because Brewer “immediately rejected certain financial obligations and continued his relentless pattern of harassment toward” her.
¶ 8. The chancellor never entered the agreed order. The trial was continued until February 25, 2008. The month before the scheduled trial date, Brewer filed bankruptcy. Holliday filed claims with the bankruptcy court for child-support arrear-age.
¶ 9. On February 25, 2008, Brewer filed another complaint for modification of child support. In this complaint, Brewer alleged that John had enlisted in the military in August 2007, and his child support should be reduced to $737.40. The complaint did not mention the proposed agreed order from 2006, which had allegedly reduced support to $600.
¶ 10. Next, on July 29, 2009, Brewer filed a motion for entry of agreed order nunc pro tunc. This motion claimed that “through inadvertence and oversight, [the] Agreed Order was never forwarded to the court.” The motion also stated that “due to [Brewer] having different attorneys represent him, between the time the media *144 tion was concluded, and the Agreed Order was drafted and ready for entry, said Agreed Order was misplaced.”
¶ 11. Holliday filed a response, and she objected to the entry of the agreed order. She argued that Brewer refused to pay various financial obligations and continued to harass her. She also claimed that Brewer had attempted to enter the agreed order, during a hearing in October 2007, and was denied.
¶ 12. On November 5, 2009, the chancery court denied Brewer’s motion to enter the agreed order nunc pro tunc. Brewer also filed a motion for relief from judgment under Rule 60(b), and the chancery court denied that motion as well.
¶ 13. The case went to trial on June 14, 2011. Brewer’s counsel asked Holliday what happened at the 2006 mediation. The chancellor did not allow Holliday to answer because he had already ruled on the agreed order. Brewer’s counsel then made a proffer of: (a) the memorandum of understanding, (b) the agreed order, (c) an email from Holliday dated July 28, 2006, that stated the new order going into effect on August 1, 2006, was for $600, and (d) a letter to Brewer’s counsel that said Brewer owed $600 for August.
¶ 14. On June 22, 2011, the chancellor entered a final judgment. The chancellor found Brewer in willful and contumacious contempt for the failure to pay his child-support obligations. The chancellor set the arrearage at $34,515. The chancellor did not find sufficient evidence for contempt for failure to pay medical expenses, but ordered the attorneys to exchange information and negotiate about the medical bills. The chancellor also ordered Brewer to pay $3,500 in attorney’s fees and $110 in court costs. It is from this judgment that Brewer now appeals.
STANDARD OF REVIEW
¶ 15. “Chancellors are vested with broad discretion, and this Court will not disturb the chancellor’s findings unless the court’s actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard.” Wright v. Wright, 737 So.2d 408, 410 (¶ 5) (Miss.Ct.App.1998) (citations omitted). We review questions of law de novo. Dorr v. Dorr, 797 So.2d 1008, 1012 (¶ 12) (Miss. Ct.App.2001).
ANALYSIS

1. Refusal to Enter Agreed Order from Mediation

¶ 16. Brewer argues that the chancellor should have entered the agreed order nunc pro tunc. He claims that it was inequitable for the chancellor to allow Holliday to agree to settle Brewer’s claims at the mediation and to operate under the agreement for years, but to then disregard the agreement because the agreed order was not signed as she believed when it was expedient for her. Holliday argues that the chancellor was correct to refuse to enter the agreed order and to enter the judgment against Brewer for the unpaid arrearage.
¶ 17. The parties both cite some general principles of domestic law. “[T]he duty to support children is a continuing duty on both parents and is a vested right of the child.” Lawrence v. Lawrence, 574 So.2d 1376, 1381 (Miss.1991) (citation omitted). The parents of a child “cannot contract away rights vested in minor children. Such a contract would be against public policy.” Id. “No party obligated by a judicial decree to provide support for minor children may resort to self help and modify his or her obligation with impunity.” Id. at 1384 (quoting Cumberland v. Cumberland, 564 So.2d 839, 847 (Miss.1990)). The general rule is that court-ordered support *145 obligations may not be modified extrajudi-cially, but proposed modifications must be submitted for court approval. Dorr, 797 So.2d at 1013 (¶ 14).
¶ 18. Brewer argues that this case is controlled by Wright, 737 So.2d at 408. In Wright, this Court affirmed the enforcement of an extrajudicial agreement that had never been presented for court approval due to an apparent oversight. Id. at 410 (¶ 6). The parties agreed to reduce the amount of child support because of changed circumstances. Id. at 409 (¶ 3). They honored the agreement’s terms until the parties discovered it had not been entered. Id. This Court affirmed the chancellor and determined that the payee would be unjustly enriched if the higher support amount was retroactively enforced. Id. at 410 (¶ 6).
¶ 19. This Court’s conclusion in Wright was based on equitable principles. This case is similar to Wright insofar as the agreement here dealt with child-support obligations that were not yet due. The alleged arrearage here did not accumulate until after the parties signed the agreed order. However, there is a difference here that is not found in Wright.
¶ 20. In February 2008, Brewer filed a pleading that asked the court to reduce his child-support obligation from $1,185 to $737.40. This pleading is contrary to the claim that the parties acted based on the agreed order, which required a child-support payment of $600. In 2008, Brewer made no mention of the unentered agreed order. This indicated Brewer’s intent to abandon entry of the agreed order or, at a minimum, established that the parties were not acting in accordance with the agreed order.
¶ 21. Brewer has not submitted any authority that would require us to reverse the chancellor. Instead, the standard of review gives the chancellor a great deal of discretion in this matter. Although we may disagree with the chancellor’s decision, we may not simply set aside the chancellor’s judgment. To reverse the chancellor, we must find that the chancellor was manifestly wrong, abused his discretion, or applied an erroneous legal standard. See Wright, 737 So.2d at 410 (¶ 5). When we consider the memorandum of understanding and then consider Brewer’s February 2008 pleading that asked the court to reduce his child-support obligation from $1,185 to $737.40, we do not find grounds to reverse the chancellor’s decision to deny Brewer’s motion to enter the agreed order nunc pro tunc. Therefore, this issue has no merit.

2. Willful Contempt for Failure to Pay Child Support

¶ 22. Next, Brewer argues that he was not in willful contempt because he paid the amount he reasonably believed was due. He claims that he operated by the terms of the agreed order; thus, his actions cannot be considered willful. He also argues that the chancellor erred because a court of equity cannot aid Holliday because she had unclean hands. Holliday testified that she made it clear all along that Brewer owed her $1,185 per month.
¶ 23. “Contempt is to be determined upon the facts of an individual case and is a matter for the trier of fact.” Milam v. Milam, 509 So.2d 864, 866 (Miss. 1987). “A citation of contempt is proper when ‘the contemner has willfully and deliberately ignored the order or the court.’ ” Westerburg v. Westerburg, 853 So.2d 826, 828 (¶ 6) (Miss.Ct.App.2003) (quoting Bredemeier v. Jackson, 689 So.2d 770, 777 (Miss.1997)). “Willful” means “[voluntary and intentional, but not necessarily malicious.” Black’s Law Dictionary 1737 (9th ed.2009).
*146 ¶ 24. Contrary to Brewer’s argument, the record shows that the parties had at least four court appearances in the bankruptcy matter filed by Brewer. Holliday filed a bankruptcy claim for $12,285 for child-support arrearage through March 2008. Holliday argues that Brewer should have been aware that the chancellor had not entered the agreed order or reduced his child-support obligation.
¶ 25. A party, such as Brewer, “who extra-judicially modifies or eliminates child support payments acts ‘at his peril.’ ” Rogers v. Rogers, 662 So.2d 1111, 1115 (Miss.1995) (quoting Varner v. Varner, 588 So.2d 428, 434 (Miss.1991)). “[C]ourt-ordered child support payments vest in the child as they accrue and may not thereafter be modified or forgiven, only paid.” Varner, 588 So.2d at 434. “[A] court cannot relieve the civil liability for support payments that have already accrued.” Thrift v. Thrift, 760 So.2d 732, 737 (¶ 16) (Miss.2000) (citation omitted).
¶ 26. Even after Holliday filed claims in Brewer’s bankruptcy action for child-support arrearages, Brewer continued to pay only $600, contrary to the only order that obligated him to pay child support. The fact of the matter is that Brewer paid only $600 when there was sufficient evidence to indicate that he was aware that his obligation had not been reduced. We find that there was substantial evidence before the chancellor to find Brewer in willful contempt.
¶ 27. Brewer also argues that the equitable doctrine of unclean hands prevents Holliday from recovery. Brewer argues that Holliday’s conduct in signing the memorandum of understanding and her attorney signing the agreed order, which allegedly reduced the child-support obligation, and the parties operation under the agreement for years, made it manifestly unjust for Holliday to claim Brewer was in willful contempt. Having addressed this argument earlier, we find no merit to the claim that Holliday had unclean hands.
¶ 28. Again, although we may disagree with the chancellor’s decision, we may not simply set aside the chancellor’s judgment. To reverse the chancellor, we must find that the chancellor was manifestly wrong, abused his discretion, or applied an erroneous legal standard. See Wright, 737 So.2d at 410 (¶ 5). Here we do not. This issue has no merit.

3. Award of Attorney’s Fees on Appeal

¶ 29. Holliday asks this Court to order Brewer to pay her attorney’s fees and expenses on appeal. This Court has generally awarded attorney’s fees on appeal in the amount of one-half of what was awarded in the lower court. Monroe v. Monroe, 745 So.2d 249, 253 (¶ 17) (Miss.1999). We grant Holliday’s request for attorney’s fees on appeal in the amount of $1,750.
¶ 30. THE JUDGMENT OF THE MONROE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ„ CONCUR. CARLTON, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION. JAMES, J., NOT PARTICIPATING.