KING, JUSTICE,
DISSENTING:
¶8. The chancellor in this case entered a judgment in favor of Austin, a nonparty, for the future repayment of his studént loans. Because I believe that Austin was a necessary party to the action, I dissent. Andrea argues that the trial court erred by entering a judgment in favor of Austin, who was not a party to the action. All parties testified that Austin knowingly and voluntarily took out student loans to pay for the high cost of the aviation program at Delta State. Andrea testified that “Austin was aware that he would be responsible for paying for the [student loans]” because the aviation program was so expensive. She stated that the parties discussed that Austin could live at home while he was paying for the loans to help him with expenses. Austin testified that he knew that he would be required to pay some of the loans back himself, but that he thought that everybody would be responsible for paying back the loans. Tommy testified: “My understanding on the $70,000 loan was that [Andrea] and I both help Austin—when he graduates, make the payments until he gets a job, and then continue to help him-until he gets feasible in order to pay the loans back.”
¶9. Andrea, Tommy, and Austin all testified that Austin knew at .the time that he signed the loans that he would be responsible for paying back some or all of his student loans. Because Austin was contractually obligated to repay his student loans and because Tommy brought an action for the future repayment of those loans, I believe that Austin was a necessary party to the action,
¶10.' Additionally, I believe that the chancellor manifestly erred in failing to dismiss Tommy’s citation of contempt. A decision of the chancery court is reversed in domestic-relations cases only “where the chancery court applied an erroneous legal standard or reached a manifestly wrong or clearly erroneous decision.” Hays v. Alexander, 114 So.3d 704, 707 (Miss.2013). Tommy testified that he was not asking that Andrea pay anything at that time, just that Andrea be held responsible for paying back half of Austin’s student loans when the loans became due and payable. This Court previously has held that “either the child or the former custodial parent may bring an action against the defaulting parent. ...” Shelnut v. Dep’t of Human Servs., 9 So.3d 359, 367 (Miss.2009) (citation omitted). However, because this is not an action against a defaulting parent, but instead an action for the future payment of students loans that are not yet due, I believe that there is a distinction.
¶11, The trial court found Andrea and Tommy jointly responsible for the repayment of Austin’s student loans from 2011 to 2013. Although college expenses are not considered to be regular child support, a parent may be ordei-ed to pay for the *423 expenses of a college or other advanced education. Nichols v. Tedder, 547 So.2d 766, 769 (Miss.1989). The duty to send a child to college is dependent on the child’s aptitude and qualifications for college as well as on the child’s behavior toward the parent. Lawrence v. Lawrence, 574 So.2d 1376, 1383 (Miss.1991) (quoting Hambrick v. Prestwood, 382 So.2d 474, 477 (Miss.1980)).
¶12. The agreement, which provided for care and custody of Austin and the property settlement of the parties, was incorporated into the final decree of divorce on September 5, 2003, when Austin was only ten years old, eight years before he enrolled in college. The agreement stated in relevant part that “[t]he parties both agree that they will each be responsible for ½ of child care expenses or school expenses for the care, maintenance and welfare of the minor child of the parties.” The trial court held that, in the settlement agreement, the term “school expenses” encompassed college tuition. T believe that this was erior. This Court previously has held that “few if any parents can anticipate with certainty, five years ahead of time, that their children will attend college.” Lawrence v. Lawrence, 574 So.2d 1376, 1381 (Miss.1991); see also Rogers v. Rogers, 662 So.2d 1111, 1115 (Miss.1995) (“This Court ... suggests to attorneys in drafting future agreements to indeed be definite and reasonable in its terms regarding time and scholastic performance standards and limitations.”). Because Austin was only ten years old at the time the child support agreement was entered into, it is unlikely that Austin’s parents intended that school expenses include college tuition, especially for the substantially higher cost of the aviation program.
¶13. Because the child support agreement was entered into when Austin was ten years old and did not include a provision for college expenses, I believe a motion for contempt was not the appropriate procedure to determine responsibility for the repayment of Austin’s loans. Tommy’s counsel stated at the beginning of the hearing that the parties were “here only on the contempt that I had filed in the 2002 case.” He stated that he was the moving party because contempt was the only outstanding issue. “[A] citation for contempt is proper only when the contem-ner has willfully and deliberately ignored the order of the court; ...” Brewer v. Holliday, 135 So.3d 117, 121 (Miss.2014). Because the 2003 child custody agreement did not contain a provision for Austin’s college expenses, the correct course of action was for Tommy to file a modification of the child support judgment. Additionally, this Court notes that Andrea could not have been in contempt for the failure to pay Austin’s student loans, because the student loans had not yet become due and payable. Tommy also had not paid anything toward Austin’s student loans. Neither party testified that money contributed before Austin’s loans matured would be used to prevent Austin from taking out more loans.
¶14. Accordingly, I believe the trial court misapplied the law in this case and erred in its interpretation of the 2003 child support agreement and in its award of a judgment in favor of Austin, a nonparty to the action. While the majority concludes that these issues should not be addressed, this Court previously has addressed issues outside the ones briefed by the parties. “This Court is not limited to only the issues stated in the [briefs]. Rather, this Court’s appellate jurisdiction extends to the full scope of the interests of justice, as it does in any.properly appealed matter.” Public Emps. Ret. Sys. of Miss. (PERS) v. Hawkins, 781 So.2d 899, 900 (Miss.2001); see also McDaniel v. Ritter, 556 So.2d 303 (Miss.1989) (“Our appellate jurisdiction ex *424 tends to cases and not just issues. While we normally limit our review to specific issues presented by the parties, that limitation is one of expedition and not jurisdiction. ... ”).
¶15. The student loans knowingly were taken out in Austin’s name and the judgment against Andrea goes solely toward Austin’s student loans, and not toward past-due repayment money that Tommy has expended for Austin. Therefore, I believe that Austin is a necessary party to an action for the determination of the repayment of his student loans.
RANDOLPH, P.J., JOINS THIS OPINION IN PART.