806 So.2d 1180 (2002)
Raymond Jewell KIRKLAND, Jr., Appellant
v.
Pamela Sue Wilkinson Kirkland McGRAW, Appellee.
No. 2001-CA-00039-COA.
Court of Appeals of Mississippi.
February 5, 2002.
*1181 J. Mack Varner, Vicksburg, Lee Davis Thames Jr., Jackson, for Appellant.
Rory Paul Randall Jr., for Appellee.
Before SOUTHWICK, P.J., BRIDGES, And CHANDLER, JJ.
*1182 CHANDLER, J., for the Court.
¶ 1. Ray Kirkland appeals a judgment of the Chancery Court of Amite County, Mississippi, modifying the terms of his child support. On appeal he argues that the chancellor erred in increasing his monthly child support payments and ordering him to pay for certain college expenses for his son. We reverse and render on the issue of payment of college expenses incurred before Pamela filed the petition to modify child support. We reverse and remand for further factual findings to determine whether Ray should pay child support while Brandon is away at college and to determine the amount of college expenses Ray should pay.

FACTS
¶ 2. Ray and Pam Kirkland were married on May 17, 1980. They had one child, Brandon Kirkland. The parties were granted a divorce based on irreconcilable differences on September 9, 1983. Brandon was two years old at the time. The court incorporated the property division, child custody and support settlement in which Ray and Pam agreed that Pam would retain custody of Brandon and Ray would enjoy reasonable visitation. Ray would also pay $100 per month in child support and provide medical insurance and payment for medical treatment for Brandon. This order specified that the parties could revisit the matter of support as to Brandon's educational needs. On November 19, 1984, an agreed judgment was entered modifying the monthly child support to $150 per month.
¶ 3. Thirteen years later, on November 1, 2000, Pam filed a motion for contempt, modification and other relief. She specifically requested that the court increase child support and order Ray to pay for Brandon's college expenses. At the hearing, the chancellor ordered an increase in the child support payments to $316 per month or 14% of Ray's adjusted gross income. The chancellor also ordered Ray to pay for a portion of Brandon's college education. Brandon had completed the 1999-2000 school year before his mother filed the petition to modify. He was enrolled in the fall 2000 semester at the time of trial. Brandon had expectations to complete the spring 2001 semester at the community college where he was enrolled and then planned to enter Mississippi State University during the fall 2001 semester. Ray was ordered to pay $1,800 for the 1999-2000 school year. The chancellor further ordered him to pay $1,685 for the fall 2000 semester and $1,685 for the spring 2001 semester. Payment for the spring 2001 semester was made due one-half by January 1, 2001, and the other half by March 1, 2001. Ray was also ordered to pay $2,662 for the fall 2001 semester. This payment was made due on or before August 1, 2001. These college payments totaled $7,832.

LAW AND ANALYSIS

I. DID THE CHANCELLOR ERR IN ORDERING AN INCREASE IN THE AMOUNT OF RAY'S CHILD SUPPORT PAYMENTS AND IN ORDERING RAY TO CONTINUE THE PAYMENTS WHILE BRANDON IS AT COLLEGE?
¶ 4. Ray argues on appeal that the chancellor erred by increasing by more than double the amount of child support and requiring that he pay the support while Brandon is at college. Decisions regarding modification of child support rest within the sound discretion of the chancellor. This Court will reverse such a decision only when there has been an abuse of discretion or manifest error in findings of fact. Hammett v. Woods, 602 So.2d 825, 828 (Miss.1992). For a court to *1183 order a modification of child support, there must be a showing of a material change of circumstances for one of the parents or for the child. McEachern v. McEachern, 605 So.2d 809, 813 (Miss.1992). The factors to be considered in determining whether a material change has occurred are as follows:
1) increased needs of children due to advanced age and maturity; 2) increase in expenses; 3) inflation; 4) relative financial condition and earning capacity of the parties; 5) health and special medical needs of the child, both physical and psychological; 6) health and special medical needs of the parents, both physical and psychological; 7) necessary living expenses of the father; 8) estimated amount of income taxes each party must pay; 9) free use of residence, furnishings, and automobile; and 10) other facts and circumstances bearing on the support as shown by the evidence.
Id.
¶ 5. In this instance the chancellor relied on several of the above factors when he ordered an increase in Ray's child support. He noted that Brandon is older and involved in more activities. He also noted that Brandon is now in college and consequently incurs increased expenses related to his education. In Kilgore v. Fuller, 741 So.2d 351(¶ 7) (Miss.Ct.App.1999), this Court approved an increase in child support because of the increased age of the child and the increased expense necessary to meet the child's needs.
¶ 6. The chancellor found that Ray's child support payments should be increased from $150 per month to $316 per month. The difference is derived from an application of Miss.Code Ann. § 43-19-101 (Rev.2000). That statute directs a chancellor to set a parent's support obligations at fourteen percent of the parents adjusted gross income for the support of one child. From the records submitted to the court, the chancellor found Ray's adjusted gross income to be $2,260. Applying the statutory guidelines, the court properly determined that Ray should pay $316 per month in child support for Brandon.
¶ 7. The remaining question relative to the child support issue is whether Ray should make these child support payments while Brandon is in college and living on campus. Our supreme court considered this issue in Sumrall v. Sumrall (Munguia), 757 So.2d 279 (Miss.2000). In that case, the father paid all of his child's college tuition and living expenses while the child was at college. Id. at 280. In addition, he paid child support to the mother during this period. Id. The father petitioned the court for a downward modification of his support obligation. Id. The chancellor found that the father's child support obligation should be suspended while the child was in college, but required that he pay support while the child lived in the home with his mother during school breaks. Id. at 281. Based on the above case law, we remand to the chancery court for a determination of whether Ray should pay the child support while Brandon is away at college.

II. DID THE TRIAL COURT ERR IN ORDERING RAY TO PAY COLLEGE EXPENSES INCURRED BEFORE PAMELA FILED A PETITION TO MODIFY CHILD SUPPORT?
¶ 8. The obligation of a father to send his child to college is discussed in Hambrick v. Prestwood, 382 So.2d 474, 477 (Miss.1980). In that case, the Mississippi Supreme Court noted that the duty to support a child through an advanced education is not absolute. Id. That court held that if a minor child showed the prerequisite aptitude for college, it was the duty of *1184 the father to provide the necessary funds for the education while the child was in the custody of the mother, if the father was financially able. Id. (quoting Pass v. Pass, 238 Miss. 449, 458, 118 So.2d 769, 773 (1960)). The Hambrick court held that the child must maintain a healthy and caring relationship with the father, as well as exhibit the necessary aptitude to exceed at college, before the court will require the father to pay college expenses. Id. "It [a college education] cannot ordinarily be demanded, but must be earned by children through respect for their parents, love, affection and appreciation of parental efforts." Id. There was testimony in this case that Ray and Brandon have a good relationship. Ray testified that he would like to see his son go to college and thinks Brandon has a very good chance of reaching his goals. The scholarships that Brandon received are evidence that he is a good student with the necessary aptitude to succeed at the university level.
¶ 9. The original divorce decree did not address Brandon's educational needs. The decree simply stated that the issue could be revisited at a later time. The chancellor was within his discretion in ordering that Ray should be responsible for a portion of Brandon's college expenses. However, the chancellor erred in ordering that Ray pay for expenses incurred by Brandon before Pamela filed a petition to modify child support.
¶ 10. The Mississippi Supreme Court addressed a similar issue in Lawrence v. Lawrence, 574 So.2d 1376 (Miss.1991). In that case, the mother filed a petition to increase her ex-husband's child support payments. She petitioned the court to make the increased payments retroactive to the date the petition was filed. Id. at 1383. The Mississippi Supreme Court held that the trial judge, may in his discretion, order the increased payments retroactive to the date the petition was filed. Id. In direct analogy, we reverse and render on this issue and hold that the chancellor could only order Ray to pay college expenses incurred on or after the date Pamela filed the petition to modify Ray's child support obligation. As Pamela filed the petition to modify on November 1, 2000, approximately one-half of the semester would remain. Therefore, all arising or unpaid expenses resulting from Brandon's educational needs for the remaining portion of the Fall 2000 semester should be divided between Pamela and Ray taking into consideration Ray's ability to pay the expenses.

III. DID THE CHANCELLOR ERR IN FAILING TO SPECIFY WHICH COLLEGE RELATED EXPENSES RAY SHOULD PAY?
¶ 11. The chancellor ordered that Ray was responsible for $1,800 for the 1999-2000 school year, $1,685 for each the fall 2000 and spring 2001 semesters and $2,662 for the fall 2001 semester. This last figure was the amount reflected in the Mississippi State catalog as the cost for one semester's room, board and tuition. The other figures were arrived at after the chancellor heard testimony concerning tuition costs and other expenses related to Brandon's education and support.
¶ 12. In Lawrence, the court stated that a parent may be ordered to pay for expenses beyond basic tuition and room and board. Lawrence, 574 So.2d at 1382. The court determined that the correct analysis required the court to consider two questions: 1) was there a material change in circumstances of the parents or the child and 2) does the child qualify for entitlement to college support under the relevant case law? Id. As discussed above, Brandon's increased age and consequently his increased needs and expenses, are sufficient *1185 to create a material change in circumstances. McEachern, 605 So.2d at 813. Also, we have already determined that Brandon is entitled to college support because he has shown the necessary aptitude and has a healthy relationship with his father. Hambrick, 382 So.2d at 477.
¶ 13. The problem arises because the chancellor did not make any specific findings of fact in his order to indicate how he arrived at the amounts Ray is to pay. Ray presented testimony that Brandon had scholarships to offset the cost of his tuition and room and board. Pamela testified that for the first year that Brandon was in school, he lived with her parents rather than on campus. There is nothing in the order to reflect these considerations. Because the chancellor failed to make specific findings of fact to indicate how he arrived at the amounts ordered, we cannot determine whether he was within his discretion in ordering Ray to make these payments. As such, we reverse and remand this issue to the chancellor for specific findings as to the amounts that Ray should pay based upon Brandon's educational and extracurricular expenses and Ray's financial ability to meet these expenses.

IV. DID THE CHANCELLOR ERR IN ORDERING RAY TO PAY FUTURE COLLEGE EXPENSES?
¶ 14. A further issue that must be addressed is the chancellor's decision to order Ray to pay for Brandon's future college expenses. The chancellor instructed Ray to pay $2,662 for the fall 2001 semester at Mississippi State. This amount is the cost reflected in the university's catalog as payment for one semester's room, board and tuition. At the time of trial, Brandon was not enrolled in Mississippi State; in fact, he had not even submitted an application. This figure does not account for possible raises in tuition or other increases in expenses, nor does it allow for scholarships that Brandon may be awarded to help with costs. Instead of specifying an amount that does not take into account the above mentioned items, the chancellor's order should address these factors and determine a percentage of the costs that Ray would be financially able to pay. These amounts should be determined from the actual costs as determined by the fee statements from the university for the fall 2001 semester; including any scholarships awarded to Brandon which would offset the cost of tuition and fees.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF AMITE COUNTY AS TO CHILD SUPPORT WHILE THE SON IS IN COLLEGE IS REVERSED AND REMANDED TO DETERMINE BRANDON'S EDUCATIONAL NEEDS. THE JUDGMENT AS TO EXPENSES RETROACTIVE TO THE DATE THE PETITION TO MODIFY WAS FILED IS REVERSED AND RENDERED. A FINING SHOULD BE MADE OF THE AMOUNT OF EXPENSES EXISTING FROM THE POINT PAMELA FILED THE PETITION UNTIL THE END OF THE FALL 2000 SEMESTER AND SUCH AMOUNT SHOULD BE DIVIDED BETWEEN RAY AND PAMELA BASED ON RAY'S ABILITY TO PAY. THE JUDGMENT AS TO FUTURE COLLEGE EXPENSES IS REVERSED AND REMANDED FOR A DETERMINATION OF RAY'S ABILITY TO PAY THE ACTUAL COSTS AT THE TIME THE FEES ARE ASSESSED. COSTS ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS and BRANTLEY, JJ., concur.