# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-01270-SCT

*DANNY EDMONDS*

*v.*

*SHARON EDMONDS AND DEPARTMENT OF HUMAN SERVICES*


| | |
|---|---|
| DATE OF JUDGMENT: | 04/19/2005 |
| TRIAL JUDGE: | HON. KENNETH M. BURNS |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM PAUL STARKS, II |
| ATTORNEYS FOR APPELLEE: | PRO SE |
| | LISA LYNN MEGGS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 08/03/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE COBB, P.J., CARLSON AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     Danny Edmonds   sought termination or reduction of child support payments based on his minor child's incarceration and subsequent conviction on a murder charge.   Sharon Edmonds filed a counter-petition seeking attorney's fees incurred in the   child's defense.   The Chancellor denied Danny's   motion but did award attorney's fees to Sharon.   Danny now challenges the chancellor's ruling.

## FACTUAL AND PROCEDURAL HISTORY

¶2.     Danny and Sharon Edmonds were divorced on August 20, 1993, and Danny was ordered to pay $213 per month in child support for the couple's minor child, Tyler.   Tyler was incarcerated on a charge of murder in May of 2003.   Danny filed a Petition to Terminate Child Support based on his son's incarceration.   Sharon filed an answer to Danny's petition and filed a Counter-Petition to require Danny to contribute to the litigation expenses she had incurred and would continue to incur regarding Tyler's criminal defense.   The parties agreed to continue this matter until after the adjudication of Tyler's criminal case.

¶3.     Tyler was convicted of murder, as an adult, in Oktibbeha County Circuit Court in July of 2004 and sentenced to life in prison.   Danny filed an Amended Petition to Terminate Child Support and Sharon responded by requesting that Danny be required to pay up to one-half of the costs associated with Tyler's defense at trial and on appeal.   The chancellor conducted a hearing on this matter in Clay County Chancery Court on March 23, 2005.   The chancellor entered his judgment denying Danny's petitions to terminate child support and ordering Danny to pay $5000.00 to Sharon for costs associated with Tyler's appeal.   Danny filed a Motion to Reconsider, Alter or Amend Judgment which the chancellor denied.   Danny then filed his timely notice of appeal.   Sharon has not filed a brief in opposition to Danny's appellate brief. We affirm in part and remand in part for the reasons stated below.

**DISCUSSION**

¶4.     On review, this Court "will not disturb the findings of a chancellor unless those findings are clearly erroneous or an erroneous legal standard was applied." ***Rennie v. Rennie***, 718 So. 2d 1091, 1093 (Miss. 1998) (citation omitted).  However, this Court reviews issues of law de novo.  ***Ellis v. Anderson Tully Co.***, 727 So. 2d 716, 718 (Miss. 1998).  Where, as here, the appellee has failed to file a brief in a matter concerning child support and/or custody, "our practice is to make a special effort to review the record for support for affirmance" rather than to "take the issues raised by the opposing party as confessed." ***Barber v. Barber***, 608 So. 2d 1338, 1340 (Miss. 1992).

       **I.     Emancipation.**

¶5.     Danny argues that the chancellor erred in failing to find that Tyler was emancipated based on his lengthy incarceration that resulted from his arrest and conviction for murder.  Though Tyler did not meet the statutory definition for finding that a minor child has been emancipated, Danny contends that he should be relieved of his support obligation since Tyler is no longer in the custody of his mother and is being supported by the State of Mississippi.

¶6.     In ***Rennie v. Rennie***, 718 So. 2d 1091 (Miss. 1998), this Court went beyond the statutory definition of emancipation to find that a minor child was emancipated.  In ***Rennie***, the evidence showed that the daughter of the parties (Heather) was no longer in school, she gave birth to an illegitimate child, she moved out of her mother's home to live with the father of her child, and she began working part-time; however, she later moved back in with her mother.

*Rennie*, 718 So. 2d at 1092-93. We reversed the chancellor's grant of child support to Heather's mother upon a finding that Heather was emancipated. *Id*. at 1094. In reaching this conclusion, we reasoned that when Heather voluntarily moved into an apartment with the father of her child, she had "removed herself from her mother's care and control" and she was also supporting herself and her child upon leaving her mother's household. *Id*. at 1094. While Heather did not meet the statutory grounds to be emancipated, as stated in Miss. Code Ann. Section 93-5-23 (Rev. 2004),[1] this Court stated that "[t]he statutory language is not exclusive" and "[o]ther situations, not contemplated by the statute, may also establish emancipation." *Id*. at 1093. In *Rennie*, this Court also recited its definition of emancipation prior to enactment of the current statutory definition and recognized that the statutory definition enlarged, rather than diminished, the judicial definition.[2] *Id*. at 1093-94. In *Rennie*, we found that Heather's

---

[1] Miss. Code Ann. § 93-5-23 states in part:
   The duty of support of a child terminates upon the emancipation of the child. The court may determine that emancipation has occurred and no other support obligation exists when the child:
      (a) Attains the age of twenty-one (21) years, or
      (b) Marries, or
      (c) Discontinues full-time enrollment in school and obtains full-time employment prior to attaining the age of twenty-one (21) years, or
      (d) Voluntarily moves from the home of the custodial parent or guardian and establishes independent living arrangements and obtains full-time employment prior to attaining the age of twenty-one (21) years.

[2] Prior to the codification of Miss. Code Ann. Section 93-5-23, this Court defined emancipation as follows:
   Emancipation, as employed in the law of parent and child, means the freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation

4

actions worked to emancipate her from her mother and release her father's support obligation, and it did not matter that Heather later returned to her mother's house because "once a child is emancipated, child support is terminated forever." *Id* at 1094 (citing *Crow v. Crow*, 622 So. 2d 1226 (Miss. 1993)).

¶7.    Danny contends that the instant situation is one of those not contemplated by statute that establishes emancipation.    While he does not cite to any Mississippi law for the proposition that a non-custodial parent should be relieved from his/her support obligation upon the incarceration of the minor child, he invokes opinions from other jurisdictions to support this contention.

¶8.    Danny cites to a Missouri Court of Appeals decision, *Sutton v. Schwartz*, 860 S.W.2d 833, 835 (Mo. Ct. App. 1993), where that court opined that in the proper situation, a lengthy incarceration could suffice to emancipate a minor child yet held that the minor child was not emancipated in the instant case because the felony conviction did not result in a lengthy incarceration and the minor child "remained subject to his mother's control throughout the relevant time frame."    The *Sutton* Court reasoned that since "emancipation is the relinquishment of parental control a life style change must be viewed from the standpoint of whether it has effectively, by its very nature, terminated parental control" and recognized that "[i]f a custodial parent is willing to help a child with behavioral problems, chemical dependency

---

to support it.
*Rennie*, 718 So. 2d at 1093-94 (citing *Caldwell v. Caldwell*, 579 So. 2d 543, 549 (Miss. 1991).

problems, and criminal convictions, the courts should not hinder the providing of such help by eliminating financial assistance by the non-custodial parent." *Id.* 835.

¶9.     In *Garver v. Garver*, 981 P.2d 471, 474 (Wyo. 1999), the Wyoming Supreme Court made reference to the dicta from *Sutton* (opining that "lengthy incarceration may create an emancipation") without finding such language applicable to the instant situation since there "remain[ed] a likelihood that Son will be released or placed on probation prior to serving a lengthy sentence." The *Garver* Court agreed with the trial court's recognition that a minor child's "incarceration does not act to relieve the parents of their duty of support, a duty that arises from both statute and common law" and acknowledged that even though the minor child "has answered to criminal charges in district court, he remains a minor until he reaches 18, the age of majority" in Wyoming. *Id.* at 473-74.

¶10.    Danny also cites to *Gimlett v. Gimlett*, 629 P.2d 450, 452 (Wash. 1981), where the Washington Supreme Court recognized that emancipation can occur both by operation of law and based on the factual circumstances of a particular case. The *Gimlett* Court stated that the concept of an emancipation-in-fact "reflects the legal recognition that certain events, such as marriage, military service, incarceration or economic sufficiency, may terminate the economic dependence a child has upon her parents" which causes the child "to be emancipated 'in fact' prior to reaching majority" and extinguishes in whole or in part a parent's rights and duties. *Id.* at 452. While the above-quoted statement of the *Gimlett* Court recognizes that emancipation can be granted upon incarceration, the issue of a minor child being incarcerated

6

was not before the Court in *Gimlett*. Danny relies on *Gimlett*'s recognition that incarceration can be a ground for emancipation and attempts to use that case in conjunction with another Washington Supreme Court case, *Sutherland v. Sutherland*, 459 P.2d 397 (Wash. 1969), to argue that Tyler's long-term incarceration has caused him to be emancipated "in fact," thus relieving Danny's support obligation. The *Sutherland* Court stated that since the jurisdiction of the court to enforce child support judgments is predicated upon a child's continued dependency:

> [i]t follows that a mother cannot compel payments of support money for children whose dependency upon her has ceased by reason of death, emancipation by marriage, attainment of majority, service in the Armed Forces of the United States, adoption, incarceration in penal or other custodial institutions, or economic sufficiency resulting from earnings, gifts, or inheritance. In the absence of specific provisions to the contrary, there is a necessary implication in every decree for child support, that its binding effect shall extend into the future only for the period during which the children's dependency upon their custodian continues.

*Sutherland*, 459 P.2d at 398-99 (citing *Ditmar v. Ditmar*, 293 P.2d 759 (Wash. 1956)). However, the Court in *Sutherland*, just as in *Gimlett*, was not faced with a scenario where it had to adjudicate whether an incarcerated minor was to be found emancipated.

¶11. Building on the notion from *Sutherland* that a mother cannot compel child support payments when a child is no longer dependent upon her because of attainment of majority, incarceration, etc., Danny points to various Mississippi cases to argue that Tyler should be considered emancipated, thus relieving him from making child support payments to Sharon, since Tyler no longer lives with Sharon and she is no longer responsible for the direct support

7

and maintenance of Tyler. Danny notes that in *Alexander v. Alexander*, 494 So. 2d 365, 368 (Miss. 1986), we stated that both parents have "a continuing duty, both legal and moral in nature" to support the children of their marriage and that the child has a vested right to receive that support. We further recognized that "[c]hild support is awarded to the custodial parent for the benefit and protection of the child, the underlying principle being the legal duty owed to the child for the child's maintenance and best interest." *Alexander*, 494 So. 2d at 368. Danny also cites to *Nichols v. Tedder*, 547 So. 2d 766, 781 (Miss. 1989), where we stated that "[c]hild support is given to the custodial parent strictly for the benefit and protection of the child." The *Nichols* Court did state that "regular child support refers to the sums of money which the particular parent is ordered to pay for the child's basic, necessary living expenses, namely food, clothing, and shelter," yet we also recognized that a non-custodial parent may also be ordered to pay other expenses such as college tuition, health-related expenses (medical, dental, psychiatric), life insurance, and automobile and/or mortgage payments. *Nichols*, 547 So. 2d at 769.

¶12.    Danny argues that since Tyler has been convicted of murder, sentenced to life in prison, and is now in the care and custody of the Mississippi Department of Corrections (MDOC), he is no longer dependent on either of his parents for his daily support and maintenance. Based on these facts, Danny argues that Tyler is "emancipated in fact" and that he (Danny) should be relieved of his obligation to make child support payments to Sharon on Tyler's behalf. Danny notes that since Tyler is no longer in Sharon's custody, she "no longer has the financial

8

obligations originally contemplated by said child support," and he argues that her purported use of support payments to pay Tyler's legal fees is "not an expense contemplated by the child support statutory or common law scheme."

¶13.    The chancellor, in denying Danny's petitions to terminate child support, recited the statutory grounds for emancipating a minor child under Miss. Code Ann. Section 95-5-23, found that Tyler met none of the conditions for emancipation under statute, and ultimately found that Tyler was not emancipated.[3]    Based on the evidence before us, the chancellor was correct in finding that Tyler was not emancipated according to Miss. Code Ann. Section 95-5-23.    However, as Danny notes, we have previously found that these statutory grounds for emancipation are not exclusive and that "other situations, not contemplated by the statute may also establish emancipation."    ***Rennie***, 718 So. 2d at 1093.    Before us is the question of whether Tyler has been emancipated by virtue of his incarceration, such that his father should be relieved from paying child support.

¶14.    While Danny makes a compelling argument that Tyler's lengthy incarceration (a life sentence for murder) should, in and of itself, establish Tyler's emancipation, the authority he presents for such a proposition is less than compelling.    He acknowledges that he has found no Mississippi authority to support his position. Though a few sister jurisdictions have

---

[3] The chancellor's judgment explicitly stated:

The Court finds that Tyler meets none of the definitions of this section. He is not 21, has not married, and is not full time employed.    He did not voluntarily move from his home although it can be argued that he has independent living arrangements.    The Court finds that Tyler is not emancipated.

concluded that the lengthy incarceration of a minor could be considered a ground for emancipation for purposes of child support, none of those cases cited by Danny (*Sutton*, *Garver*, *Gimlett*, or *Sutherland*) hold that a minor child was emancipated by virtue of incarceration. As Danny has failed to point to any case where a court has actually found a minor child to be emancipated based upon his/her incarceration, we decline to find that Tyler's incarceration, in and of itself, worked to emancipate him from his parents.

¶15. Furthermore, the testimony at the motion hearing showed that even though Tyler now receives the majority of his support from MDOC, his mother still spends roughly $140 per month in support of Tyler, though this money is deposited into a canteen account at the correctional facility. Danny also admitted at the hearing that he was in arrears on his child support payments in the amount of $4,380.97. Though child support is typically awarded to the custodial parent, such an award is "for the benefit and protection of the child" and the benefits "belong to the child, and not the parent who, having custody, receives such benefits under a fiduciary duty to hold and use them for the benefit of the child." *Caldwell*, 579 So. 2d at 547 (citation omitted). Additionally, this Court has recognized that children have "a vested right . . . growing out of the marriage relation" to support from both of their parents, a duty which is "both legal and moral in nature." *Alexander*, 494 So. 2d at 368.

¶16. With these rules in mind, we find that there is sufficient evidence in the record for the chancellor to conclude that Tyler is still receiving support and maintenance from his mother (despite his incarceration), such that the chancellor's ruling that Tyler was not emancipated

10

(and thus still entitled to support payments from Danny) is not an abuse of discretion. According to *Alexander*, Tyler has a vested right to the support of his parents. He is unable to provide for his own support, which is one of the strongest considerations in determining that a minor is emancipated, even though most of his needs are met by MDOC. Danny should not, therefore, be allowed to completely avoid the support obligation to which Tyler is entitled, even though Tyler is no longer under Sharon's direct custody and control. Thus, we find that the chancellor did not abuse his discretion in denying Danny's petition to terminate child support.[4]

##  II.   Motion for Modification of Child Support.

¶17.   As an alternative to his argument that his child support payments should be terminated, Danny argues that he is entitled to a modification of child support based on a material change in Tyler's circumstances and that the chancellor erred in failing to properly consider a modification of child support. Danny cites to an Illinois Appellate Court case, *Van Winkle v. Van Winkle*, 437 N.E.2d 358 (Ill. App. Ct. 1982) (superseded by statute as stated in *In re Marriage of Hawking*, 608 N.E.2d 327 (Ill. App. Ct. 1992), to support this argument.

¶18.   In *Van Winkle*, the father had filed a petition for modification seeking to terminate his child support obligation, based on the fact that his son was adjudicated a juvenile delinquent and was in the custody of the state's department of corrections, which the trial court denied.

---

[4] As his second issue, Danny raises an argument that if child support is terminated, he should be granted retroactive credit for all payments made since July 2004. Since we found that the chancellor did not err in refusing to terminate child support, this issue is moot and further discussion is not necessary.

*Van Winkle*, 437 N.E.2d at 359-60. The Illinois Appellate Court stated that a transfer in custody was the type of substantial change in circumstance that could warrant a modification and noted that while "placement of a minor child with the Department of Corrections does not relieve the parents of their duty of support," it could not be denied that the facts before the Court showed that the minor child's "current needs, while in the custody of State juvenile authorities, have substantially decreased." *Id*. at 360. The *Van Winkle* Court remanded the case to the trial court because "the record does not disclose that a reduction in child support was considered by the trial court in its determination and that we cannot determine on the record before us that such a reduction was not warranted under the circumstances presented." *Id*. at 361. While this case from a sister jurisdiction may be more factually similar than any Mississippi case found by Danny, we need not rely on *Van Winkle* for adjudication of this issue, as there are a number of Mississippi cases dealing with modification of a child support award.

¶19. As this Court has previously stated, modification of a child support award may be appropriate "if it can be shown that there has been 'a substantial or material change in the circumstances of one or more of the interested parties: the father, the mother, and the child or children, arising subsequent to the entry of the decree to be modified.'" *Caldwell*, 579 So. 2d at 547 (quoting *Tedford v. Dempsey*, 437 So. 2d 410, 417 (Miss. 1983)). In *Caldwell*, we also articulated several factors to be considered in determining if a material change has occurred, including:

(1) increased needs caused by advanced age and maturity of the children (2) increase in expenses, and (3) inflation factor. Other factors include (4) the relative financial condition and earning capacity of the parties, (5) the health and special needs of the child, both physical and psychological, (6) the health and special medical needs of the parents, both physical and psychological, (7) the necessary living expenses of the father, (8) the estimated amount of income taxes the respective parties must pay on their incomes, (9) the free use of a residence, furnishings, and automobile and (10) such other facts and circumstances that bear on the support subject shown by the evidence.

*Id*. Our Courts have found the modification of a child support award (both an increase and reduction) to be warranted on a number of grounds. *See Parker v. Parker*, 645 So. 2d 1327 (Miss. 1994) (affirming reduction in support because father's loss of income due to loss of job was a substantial and material change in circumstances); *Setser v. Piazza*, 644 So. 2d 1211 (Miss. 1994) (finding father's support obligation should have been abated due to material change in circumstance where hurricane destroyed his home and his truck and trailer needed for his job); *Edwards v. Edwards-Barker*, 875 So. 2d 1126 (Miss. Ct. App. 2004) (affirming increase in support where evidence showed that costs of supporting children had increased as they got older and father was making more money than at time of divorce); .

¶20.    Here, the testimony showed that Tyler was not living with either parent, but rather, was currently in the custody of MDOC serving a life sentence for murder. Sharon testified that she has not provided Tyler with meals, clothing, or other regular expenses since his incarceration. Sharon admitted that the State of Mississippi was now providing for Tyler's food, clothing and shelter, but she stated that she had been putting roughly $140 per month in a canteen account which provided Tyler with toiletries and other items which are not provided by the State. These

13

are facts which tend to show that a material change in circumstances has occurred since the time of the divorce decree. Neither parent is directly providing for Tyler's daily support, and Sharon's only support of Tyler, as it pertains to routine expenses normally contemplated by child support, consists of approximately $140 per month that she deposits into his canteen account.

¶21. Based on the record before us, there is sufficient evidence to warrant a consideration of Danny's request for modification. Though the chancellor considered and rejected Danny's argument that his support obligation should be terminated, the chancellor's judgment fails to even address Danny's alternative request that his child support payments be modified/reduced, a request which he made in both his original and amended petitions and in his Motion to Reconsider, Alter or Amend Judgment. Although this Court has stated that a "finding by the court that there had been no material change, and that the child support award should remain at [the same level], is reviewed under the manifest error/substantial evidence rule," *Caldwell*, 579 So. 2d at 547, we cannot uphold a chancellor's finding (regarding a change in circumstances) when the record reflects that he did not address/consider whether modification was warranted. Accordingly, we find that the chancellor committed reversible error in failing to consider Danny's modification request.

### III. Payment of Child Support into Commissary Account.

¶22. Danny argues that if this Court does not terminate Danny's child support obligation, he should be allowed to make child support payments directly to Tyler's commissary account. He cites no authority for such a proposition and makes no allegation that it would be in error

14

for the chancellor to continue allow payments to go through Sharon, who has a fiduciary obligation to see that the support payments are used for Tyler. *See Caldwell*, 579 So. 2d at 547. We have recognized that an appellant has a duty "to provide authority and support of an assignment" of error and "this Court is under no duty to consider assignments of error when no authority is cited." *Drennan v. State*, 695 So. 2d 581, 585-86 (Miss. 1997). We find this rule to be applicable here and hold that Danny is procedurally barred from having this issue considered on appeal for failure to cite to any authority.

## IV. Attorney's Fees.

¶23. Danny argues that the chancellor erred in awarding $5,000.00 to Sharon to pay for half of the attorney's fees associated with Tyler's criminal appeal. He complains that Sharon contracted with a private attorney without ever consulting him and argues that he should not be financially responsible for this unilateral expense which he claims was not a necessity, since Tyler was entitled to appointed counsel by the State. Danny claims that Sharon never requested attorney's fees for Tyler's appeal until March 17, 2005, the date she filed her response to his amended petition, and argues that Sharon incurred the disputed fees prior to that date since Tyler was convicted in July of 2004 and his appeal commenced shortly thereafter. Danny argues that under *Kirkland v. McGraw*, 806 So. 2d 1180 (Miss. Ct. App. 2002), and *Van Winkle*, the chancellor was only entitled to reimburse Sharon for expenses incurred on or after the date that she filed her petition to modify his child support obligation.

15

¶24. In rendering his judgment, the chancellor found that Sharon first made a request for an increase in child support to help pay Tyler's legal bills on January 20, 2004, the date that she filed her Counter-Petition in response to Danny's initial Petition to Terminate Child Support. While Sharon made a general request for an increase in child support to cover "future out-of-pocket expenses" in her Counter-Petition of January 20, 2004,[5] she did not specifically request that Danny contribute to expenses associated with Tyler's appeal until she filed her Petition to Modify on March 17, 2005. The chancellor did not hold Danny responsible for any of the attorney's fees associated with the trial of Tyler's criminal case, stating that "[a]ll of the evidence in this is that the approximate $104,000.00 incurred by Sharon and Tyler's aunt was expended before the filing of the modification petition." However, the chancellor did find that "Sharon made timely demand for Danny to contribute to Tyler's appeal costs," found $10,000.00 to be a reasonable fee for a criminal appeal and ordered Danny to pay $5,000.00 toward Tyler's appeal.

¶25. The chancellor's decision was based on the Court of Appeals' decision in *Kirkland v. McGraw*. In *Kirkland*, the mother sought an increase in the amount of support payments made by the father, which the trial court granted. *Kirkland*, 806 So. 2d at 1182. On appeal, the

---

[5] In her Counter-Petition, Sharon alleged that "[a]t the present time, family members have contributed $2,500.00 towards out-of-pocket expenses in the defense of the minor child, as well as future out-of-pocket expenses which have yet to be incurred" and requested that "the amount of child support should be increased to a reasonable amount to take into account the substantial litigation expenses which are being incurred on behalf of the minor child." These statements indicate that Sharon was seeking to make Danny financially responsible for legal fees that had yet to be incurred.

Court of Appeals held that the chancellor erred in ordering the father to pay for expenses associated with the son's college education that were incurred prior to the mother's filing of a petition to modify child support. *Id*. at 1184. The ***Kirkland*** court cited to ***Lawrence v. Lawrence***, a case in which this Court stated that "the trial judge, may in his discretion, order the increased payments retroactive to the date the petition was filed." *Id*. (citing ***Lawrence v. Lawrence***, 574 So. 2d 1376, 1383 (Miss. 1991)). Based on the ruling in ***Lawrence***, the ***Kirkland*** court held that "the chancellor could only order [the father] to pay college expenses incurred on or after the date [the mother] filed the petition to modify [the father's] child support obligation." ***Kirkland***, 806 So. at 1184. While the chancellor was correct in finding that he may not order payment of expenses before a request for modification is filed, he erred in finding January 20, 2004, controlling since a specific request for attorney's fees related to Tyler's appeal was not made until March 17, 2005.

¶26. Also, there is a factual distinction between requiring a non-custodial parent to contribute to his minor child's criminal defense and requiring a non-custodial parent to contribute to a minor child's educational expenses associated with college. In scrutinizing the chancellor's reliance on ***Kirkland*** and ***Lawrence***, which held that a non-custodial parent could be required to contribute to educational expenses (including college), a discussion of the authority on which those cases rely, ***Nichols v. Tedder***, is necessary to properly dispose of this issue. In ***Nichols***, this Court invoked Miss. Code Ann. Sections 93-5-23 and 93-11-65, which address a court's authority for making decisions concerning care, custody, support, and/or

17

maintenance of minor children, and indicated that not only did these statutes cover orders for regular child support (such as food, clothing, shelter), they were also "'susceptible of an interpretation to allow' the court to order the payment of expenses for a college education."[6] *Nichols*, 547 So. 2d at 768-69.

¶27. While we have recognized that a chancellor has the discretion to order payment for educational expenses associated with college, this recognition is based on the fact that Miss. Code Ann. Section 93-11-65(1)(b) specifically provides for payment of educational expenses. We find no such provisions within Sections 93-5-23 or 93-11-65 that can be extended to payment of criminal defense expenses, which in our view, does not fit under the general provisions of "maintenance," "support," or "education" for a child. Miss. Code Ann. § 93-11-65(1)(a)-(b). Therefore, we decline to extend *Nichols*, *Lawrence*, or *Kirkland* to the instant case. The holdings in those cases should not be read in such a way as to allow Sharon to hold Danny financially liable for the costs related to Tyler's criminal appeal which she incurred unilaterally.

¶28. The "retroactive reimbursement of extraordinary expenses" should not be allowed in the case at bar. *Van Winkle*, 437 N.E.2d at 363. Based on *Kirkland* and *Lawrence*, Sharon's request for appeal-related expenses was untimely, as Tyler was convicted in July of 2004 and his appeal commenced shortly thereafter, yet the request for attorney's fees was not made until

---

[6] We have previously held the reason the statutes cover college education is because they use the term "education" and do not exclude college education, making the extension logical. *Pass v. Pass*, 238 Miss. 449, 118 So. 2d 769, 773 (1960).

18

March 17, 2005. Additionally, we find that attorney's fees related to a minor child's criminal defense are not an expense contemplated by the child support provisions of Miss. Code Ann. Sections 93-5-23 and 93-11-65. Therefore, we find that the chancellor abused his discretion in awarding $5,000.00 in attorney's fees to Sharon Edmonds.

## CONCLUSION

¶29. We find that the chancellor did not abuse his discretion in finding that Tyler was not emancipated. However, the record before us does not reflect that the chancellor either considered or ruled on Danny's request for a modification of child support. Accordingly, we remand this case to Clay County Chancery Court so that the chancellor may make a ruling on Danny's modification request. We also find that the chancellor abused his discretion in awarding $5,000.00 in attorney's fees to Sharon and vacate that award.

¶30. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY.**

19