952 So.2d 957 (2006)
Lynda CRAYTON, Administratrix of the Estate of James H. Crayton, Deceased, Appellant
v.
Valerie M. BURLEY and Jessica H. Crayton, Appellees.
No. 2005-CA-01126-COA.
Court of Appeals of Mississippi.
September 19, 2006.
Rehearing Denied March 27, 2007.
*958 Randolph Walker, attorney for appellant.
Daniel Keith Tucker, Booneville, attorney for appellees.
Before KING, C.J., SOUTHWICK and IRVING, JJ.
SOUTHWICK, J., for the Court.
¶ 1. The Chancery Court of Alcorn County denied a motion by a father to modify his child support obligation. The mother's motion that the father should contribute towards their daughter's college expenses was granted. On appeal, the father challenges both decisions. We affirm.

FACTS
¶ 2. The appellant James Crayton died in May 2006, which was after this appeal was filed. We have granted a motion to substitute his widow, Lynda Crayton, as the appellant.
¶ 3. James Crayton and Valerie Burley had a daughter named Jessica, born to them in 1984. Mr. Crayton, by court order in 1997, was required to make monthly child support payments in the amount of $208. In 2004, Crayton filed a motion to modify the amount of support. Crayton argued that modification was justified due to material and substantial changes in his health and income. Due to the effects of non-Hodgkins lymphoma, he was no longer working. He also asserted that his daughter Jessica had received $3,665 in Social Security dependent benefits due to his disability. Jessica and her mother, Valerie Burley, filed a counterclaim seeking an increase in support.
¶ 4. The most significant factual issue confronting the chancellor was to determine Crayton's income. The financial information that he was required to file with the court stated that for 2001 he earned $20,897, and in 2002 he earned $17,631. *959 He listed monthly income of $1,510.43 at the time of the hearing in April 2005. Eventually the chancellor used this stated income to make a minor change to the monthly support obligation from $208 per month to $211.40 per month.
¶ 5. The more important income during this period consisted of the proceeds from an insurance policy. Based upon evidence of what Crayton received that was not needed for medical treatment, Crayton was ordered to pay one-half of Jessica's college expenses for the 2004-2005 school year and for the first semester of the 2005-2006 school year. The total amount Crayton was ordered to pay for these school expenses was $11,246.50. Crayton's support obligation ended on November 18, 2005, because Jessica turned twenty-one years old on that date.

DISCUSSION
¶ 6. The chancellor will not be reversed "when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was used." Kilpatrick v. Kilpatrick, 732 So.2d 876, 880 (Miss.1999).
ISSUE 1: Modification of Child Support and Burden of Proof
¶ 7. Crayton argues that his daughter and her mother did not meet their burden of proof for an increase in Crayton's support obligation. Instead, Crayton argues that the evidence required a reduction or elimination of support. Crayton concedes that Jessica had additional expenses as a result of attending college. Crayton's contention is that there was no proof that he was able to pay any additional money in light of his illness and reduced income.
¶ 8. A party seeking modification of child support must show a material change in the circumstances that justify the modification. The factors to be considered in making a determination to modify child support include these:
(1) increased needs caused by advanced age and maturity of the children (2) increase in expenses; and (3) inflation factor. Other factors include (4) the relative financial condition and earning capacity of the parties, (5) the health and special needs of the child, both physical and psychological, (6) the health and special medical needs of the parents, both physical and psychological, (7) the necessary living expenses of the father, (8) the estimated amount of income taxes the respective parties must pay on their incomes, (9) the free use of a residence, furnishings, and automobile and (10) such other facts and circumstances that bear on the support subject shown by the evidence. . . .
Caldwell v. Caldwell, 579 So.2d 543, 547 (Miss.1991).
¶ 9. Crayton alleges that the chancellor's ruling was procedurally defective because there were no detailed findings on these factors. There is no requirement that a chancellor itemize findings on factors to modify child support. Wright v. Stanley, 700 So.2d 274, 283 (Miss.1997). A party may move for findings of fact and conclusions of law, but Crayton made no request here. M.R.C.P. 52. There is no reversible error in the manner that the chancellor explained his ruling.
¶ 10. Crayton was suffering a severe illness. With this illness came substantial private insurance payments. We have reviewed the record closely on the fact issues regarding the insurance benefits. There are bank records and copies of checks that Crayton received during 2003 and 2004. The insurance policy is not included in the record and its terms were not explained by any witness at trial. Crayton referred to *960 the policy as a "cancer policy" that he purchased about eight years prior to the date of trial. Crayton testified that a disability insurance check would be sent whenever he received a cancer treatment. Crayton stated that Medicare and his Blue Cross Blue Shield policy paid for about ninety percent of the treatment costs. The other ten percent, which Crayton stated was about $500 per treatment, was paid from the policy benefits. Crayton testified that his personal payments for treatments totaled about $8,000 in 2003 and would be about the same for 2004. He conceded that the remainder of the money was for him to use in any manner he desired.
¶ 11. As proof of Crayton's ownership of the benefits, we note that each payment was made by check from National Travelers Life Company and National Life Company, payable solely to James Crayton. No endorsement of any other party was required. Crayton deposited these checks into a account owned jointly with his wife, but we can only conclude on this record that Crayton alone was the beneficiary of the disability policy. His commingling the funds in a joint account does not affect the chancellor's obligation to consider these payments as income to Crayton. The amount of the support obligation for children is based on a parent's "adjusted gross income," a term which includes "gross income from all potential sources that may reasonably be expected to be available to the absent parent including, but not limited to . . . any other payments made by any person, private entity," or any other entity. Miss.Code Ann. 43-19-101(3)(a) (Rev.2004). Insurance benefits that were not needed for Crayton's treatment should be considered in calculating support.
¶ 12. In 2003, Crayton received just over $56,000 in disability insurance payments and was able to keep around $48,000. In 2004, Crayton received over $52,000 in disability insurance payments and over $14,000 in Social Security back pay; he used only $8,000 for treatment reimbursement payments. Counsel for Crayton has suggested that the remaining disability insurance money was obligated for other treatments and expenses. There is no evidence to support this statement. It appears that most of the policy benefits were spent, but nothing in the record refutes that Crayton had complete discretion over these funds beyond approximately $8,000 per year.
¶ 13. Crayton did not reveal the insurance policy money in the financial statement that he filed with the chancery court. The chancellor was inclined to penalize Crayton for not accurately representing his income but did not. In determining whether to modify the support obligations, the chancellor considered the daughter Jessica's increased expenses, the financial condition of the parties, the health and needs of the father and daughter, and various living expenses. Crayton sought a reduction in child support, but the chancellor was not persuaded. The chancellor considered the relevant factors in deciding to increase monthly child support, though only by the de minimis amount of three dollars. The substantial change was in requiring a contribution towards Jessica's college expenses. We consider that part of the modification below.
¶ 14. Crayton also argues that assets of his wife were considered in determining his support obligation. The chancellor assured himself that Mrs. Crayton's income was not included in determining if Mr. Crayton had the resources to pay college expenses. The calculations of income were based upon voluminous records detailing Crayton's income from tax returns and bank deposits. A determination was made *961 of Crayton's income that disregarded any income of his wife.
¶ 15. We find no error in the modification of monthly child support.
ISSUE 2: Credit for Child Support
¶ 16. Crayton argues that he was not properly credited for the Social Security benefits that Jessica received as a result of his disability. Crayton argues that no specific finding, calculation, or other determination was detailed to reflect that credit was received for the Social Security payments. The chancellor explained his ruling on a credit in this manner:
under the circumstances, we have given credit here because that $3665 paid by [Crayton] was paid prior to September 18, 2004. I'm giving him credit for whatever credit that might be. But the court feels that sufficient credit is being given in the fact that I am absolutely disregarding the amount of support and income that he received from the insurance policies that he did not show on his 8.05 [financial disclosure].
¶ 17. The chancellor determined that Crayton had income above what he had reported on his financial disclosure to the court. Thus, any credit that he was due for the $3,665 paid in Social Security benefits was more than offset by the larger increase in monthly support Jessica would have received had the total amount of Crayton's income been considered in modifying the support.
¶ 18. We do not believe such shortcut calculations are the best approach for a chancellor. Credit on a child support obligation should occur where the child is paid Social Security benefits due to the paying parent's disability or retirement. Hammett v. Woods, 602 So.2d 825, 828 (Miss.1992). To determine if Crayton was prejudiced by the simplistic equating of the not-applied credit and his unreported income, we have examined what would have been the proper additional child support under the guidelines if the entirety of the insurance payments that were not used for treatments were considered as income.
¶ 19. Jessica's mother filed to modify Crayton's support obligation on September 10, 2004. It is within the discretion of the chancellor to order increased support payments retroactive to the date of a motion to modify. Edmonds v. Edmonds, 935 So.2d 980, 989 (¶¶ 25-26) (Miss.2006)[1] (discussing Kirkland v. McGraw, 806 So.2d 1180, 1184 (Miss.Ct. App.2002)). Likewise, college expenses incurred on or after the date of the motion may be awarded. Id. Thus any increase based on Crayton's income should have been for expenses allocable after September 10, 2004. His support obligation continued until Jessica became twenty-one years old on November 18, 2005.
¶ 20. The record contains Crayton's bank records from late 2002 through September 2004. In September 2004 Crayton received $10,274 from his insurance which was paid after the September 10 motion to modify. There was no subsequent updated evidence. Extrapolating from what had been paid in 2003 and 2004, we can reasonably estimate that for the remaining year before the support obligation terminated on Jessica's twenty-first birthday, Crayton should have received at least $60,000. Had the chancellor ordered the guideline percentage to be applied to this expected income, Crayton would have paid about $8,400 during that twelve months.
¶ 21. The $3,665 Social Security benefits did not nearly equal the amount of *962 support that would have resulted from applying the guideline percentage to all his income. The more significant payments ordered were for college expenses, which we will discuss next. Potentially, the payment of college expenses caused the chancellor not to be overly concerned about making a more accurate adjustment in the monthly support. There is no cross-appeal that a larger modification in monthly support should have been ordered. We find no reversible error.
ISSUE 3: Award of Educational Expense
¶ 22. A parent may be ordered to pay for college education expenses if the child shows aptitude for college, a hearing is held on the matter, the parent has the means to pay for the education, and the parent's customary lifestyle will not be affected. Saliba v. Saliba, 753 So.2d 1095, 1101 (Miss.2000). The parents may be ordered to pay according to their respective financial situations. Id.
¶ 23. Crayton argues that his daughter Jessica did not meet her burden in proving her aptitude to attend college. Jessica conceded that her grades were "a little shaky" in the second semester of her first year, but she had thereafter proved her ability to succeed in college. Jessica was in her second year of college at the time of the hearing. She testified that she was in good standing as a student and planned to complete a four year nursing program at the University of Southern Mississippi.
¶ 24. The chancellor accepted Jessica's testimony that she was able to complete the nursing program. Evidence showed that Crayton had close to $30,000 when Jessica enrolled in college, and was receiving significant amounts of insurance benefits during 2003 and 2004 over which he had total discretionary authority. There was no evidence that the insurance payments would stop during the remaining period of Jessica's minority. Evidence was submitted that Jessica's mother's income had decreased and that Jessica's living expenses had increased after going to college.
¶ 25. Jessica did not have to demonstrate that she had the aptitude to be the best college student, but she did prove that she had the ability to complete her higher education successfully. The evidence offered was sufficient to show her aptitude. We now look at the amount awarded.
¶ 26. The chancellor ordered Crayton to pay one half of the college expenses for the fall semester in 2005 allocable for the period prior to Jessica's birthday on November 18. Crayton also was to pay one-half of the college expenses for the 2004-2005 school year, which started only a few weeks prior to the filing of the request for modification on September 10, 2004. Though many of the charges for the 2004 fall semester would likely have been paid prior to the motion for modification, we find no error in making Crayton responsible for half of them since the vast majority of the semester occurred after the motion. We affirm the award of these college costs.
¶ 27. THE JUDGMENT OF THE ALCORN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Edmonds is sufficiently recent that a motion for rehearing may alter its analysis; we cite it for the current, if not final, endorsement of our Kirkland approach.