IRVING, P. J.,
for the Court:
¶ 1. On April 15, 2010, Rafael A. Marin filed a complaint in the Harrison County Chancery Court seeking joint legal custody and visitation rights regarding his child with Mario 0. Stewart and an order for him to pay a reasonable sum of child support. After the initial hearing, the chancellor entered a temporary order requiring Marin to pay $455.23 per month in child support, which the chancellor finalized in the final order. Marin filed a motion to reconsider, which the chancellor denied.
¶ 2. Feeling aggrieved, Marin appeals and argues that the chancellor erred by (1) ordering him to pay twenty-five percent of his adjusted-gross income for child support; (2) failing to consider the shared-parenting arrangement between him and Stewart; (3) failing to consider the total assets of the parties; (4) erroneously factoring in Marin’s wife’s work status; (5) penalizing Marin for residing for free with his mother, but ignoring the fact that Stewart also lives with her parents for free; (6) declining to consider evidence at the final hearing that Stewart failed to disclose $1,000 in Social Security benefits on her Uniform Chancery Court Rule 8.05 financial statement; and (7) declining to consider that Marin had moved from his mother’s home at the time of the final hearing.
¶ 3. Finding no error, we affirm.
FACTS
¶ 4. At the time of the initial hearing, Marin worked as a bellman at the Beau Rivage Hotel and Casino in Biloxi, Mississippi. After considering testimony from Marin and Stewart that Marin regularly received cash tips, the chancellor adjusted Marin’s 2009 gross income from $27,199.07 to $28,000. Stewart testified- that when she and Marin lived together, Marin would earn cash tips from $50 to over $100 per day. She further testified that Marin told her that he does not report his tips to the IRS. Stewart worked as a front-office manager at the Four Points by Sheraton in Biloxi, Mississippi. Her gross income for 2010 was $25,018. Stewart lived with her parents at the time of the initial hearing and stated that she paid whatever she could in monthly rent, ranging from $100 to $300. Marin and his wife lived with his mother and did not pay rent or any other household expenses. Stewart testified that she pays $105 per week for daycare and claimed that living expenses for her child with Marin are $1,497.66 per month.
¶ 5. Marin testified that his mother was willing to take care of the child for free to eliminate the cost of daycare. However, Stewart expressed that she would rather pay for their child to attend daycare than allow the child to stay with Marin’s mother because (1) Marin’s mother’s house is too far away from her job; (2) it would be better for the child to be in a place where he can be active around other children; and (3) she believes that Marin’s mother is unreliable, sleeps most of the day, and smokes in the house, even though Marin insists that she does not.
*156 ¶ 6. After the initial hearing, the chancellor determined that Marin should pay in child support more than the fourteen percent of his adjusted-gross income prescribed by Mississippi Code Annotated section 43-19-101 (Supp.2012). The chancellor concluded that because Marin lived at home with his mother and his wife had a separate income, Marin’s “income certainly [could] be stretched much further than what would be provided for under the schedule.” The chancellor further reasoned that at fourteen percent, Marin would be paying “way less than what it actually costs for [Stewart] to keep the child in the daycare.” Due to time constraints, the chancellor ordered that an additional hearing be held at a later date in order for Marin to have an opportunity to cross-examine Stewart. The chancellor entered a temporary order setting the amount of child support at $455.23 per month. The chancellor later finalized this amount in a final order after the second hearing.
¶ 7. Additional facts, as necessary, will be related during the analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 8. Appellate courts apply a limited standard of review in domestic-relations cases and will not reverse the chancellor’s judgment unless the chancellor applied an erroneous legal standard or his findings were manifestly wrong or clearly erroneous. Yelverton v. Yelverton, 26 So.3d 1053, 1056 (¶ 11) (Miss.2010). Questions of law are reviewed de novo. Id.
¶ 9. Section 43-19-101 provides guidelines that suggest the percentage of the non-custodial parent’s adjusted gross income that should be paid to the custodial parent to support a certain number of children. The statute provides that the amount of child support for one child should be fourteen percent of the noncustodial parent’s adjusted gross income. Miss.Code Ann. § 43-19-101(1). There is a rebuttable presumption that these guidelines are appropriate. Id. The chancellor may deviate from the guidelines if he makes an on-the-record finding that the application of the guidelines is inappropriate. Miss.Code Ann. § 43-19-101(2). Mississippi Code Annotated section 43-19-103 (Supp.2012) provides the following criteria upon which the chancellor must make a finding on the record to rebut the presumption that the guideline amount is appropriate:
(a) Extraordinary medical, psychological, educational^] or dental expenses.
(b) Independent income of the child.
(c) The payment of both child support and spousal support to the obligee.
(d) Seasonal variations in one or both parents’ incomes or expenses.
(e) The age of the child, taking into account the greater needs of older children.
(f) Special needs that have traditionally been met within the family budget even though fulfilling those needs will cause the support to exceed the proposed guidelines.
(g) The particular shared parental arrangement, such as where the non[-]custodial parent spends a great deal of time with the children thereby reducing the financial expenditures incurred by the custodial parent, or the refusal of the non[-]custodial parent to become involved in the activities of the child, or giving due consideration to the custodial parent’s homemaking services.
(h) Total available assets of the obligee, obligor and the child.
(i) Payment by the obligee of child care expenses in order that the obligee may *157 seek or retain employment, or because of the disability of the obligee.
(j) Any other adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt.

I. Shared Parenting

¶ 10. Marin contends that section 43-19-103(g) is a criterion that the chancellor failed to consider. He argues that his voluntary extended-visitation arrangement with Stewart satisfies section 43-19-103(g) and would justify a downward deviation from the child-support guidelines. Marin did not raise this issue before the chancellor, and he is procedurally barred from asserting it for the first time on appeal. See Wilburn v. Wilburn, 991 So.2d 1185, 1191 (¶ 14) (Miss.2008).
¶ 11. Procedural bar notwithstanding, while section 43-19-101(2) requires that the chancellor make specific findings under the criteria in section 43-19-103 in order to deviate from the guidelines, it does not require that all criteria be considered in order for the findings to be sufficient. See Hensarling v. Hensarling, 824 So.2d 583, 588 (¶¶ 13-15) (Miss.2002) (affirming the chancellor’s reasoning that the guidelines were inappropriate when the chancellor’s findings only addressed two of the criteria under section 43-19-103); Smith v. Smith, 25 So.3d 369, 374 (¶¶ 14-15) (Miss.Ct.App.2009) (affirming the chancellor’s on-the-record findings when his findings only applied to two of the criteria listed under section 43-19-103).
¶ 12. Here, the chancellor stated on the record his reasons for deviating from the guidelines. Although his reasoning did not include an analysis of Marin’s visitation arrangement — which was not enough to warrant a deviation from the guidelines since there is no indication in the record that the visitation reduced Stewart’s financial expenditures — the chancellor’s findings on the record indicate that he deemed the guidelines inappropriate because fourteen percent of Marin’s adjusted gross income would have been less than what it costs to keep the child in daycare. The chancellor’s reasoning properly falls under section 43-19-103®, as the child must go to daycare in order for Stewart to retain employment. Therefore, there is sufficient evidence to justify the chancellor’s determination that the application of the guidelines were inappropriate. This issue is without merit.

II. Total Assets of the Parties

¶ 13. Marin also claims that the chancellor misapplied the law or used an incorrect legal standard by dismissing as irrelevant the fact that Stewart did not disclose on her Rule 8.05 financial statement the $1,000 per month that she receives in Social Security benefits. He argues that under section 43-19-103(h), the chancellor must consider all of the assets of the parties before determining that the statutory percentage is inappropriate. Stewart receives the $1,000 on behalf of her other child, whose father is deceased. When Marin brought the omission to the chancellor’s attention during the final hearing, the chancellor stated that although Stewart should have disclosed the benefit, he would -not change his ruling. The chancellor acknowledged that the benefit was for another child, but stated that Stewart could spend the money however she pleased. Nevertheless, the chancellor did not consider the undisclosed Social Security benefits a reason to decrease Marin’s child-support obligations. We cannot find that the chancellor erred in this regard because, despite the chancellor’s finding that Stewart has wide latitude in determining how to spend the Social Security *158 benefits, the benefits belonged to Stewart’s other child. This issue is without merit.

III. Marin’s Wife’s Income

¶ 14. Marin contends that the chancellor misapplied the law by considering Marin’s wife’s income in awarding child support because section 43-19-101(3)(a) prohibits such consideration. Marin is also procedurally barred from raising this issue, as it was not raised in the chancery court. Nevertheless, as we explain below, this issue is without merit.
¶ 15. According to section 43-19-101(3)(a), the income of the payor’s current spouse is excluded when determining the payor’s gross income for the purposes of child support. Although the chancellor briefly mentioned the fact that Marin’s wife worked full-time, there is no evidence that the chancellor considered Marin’s wife’s income when calculating Marin’s gross income. The chancellor reasoned that because Marin’s wife worked full-time—and because the couple lived with his mother—they likely shared the few expenses they incurred as a couple, which supported the chancellor’s determination that Marin’s child-support payments should be more than the fourteen percent suggested by section 43-19-101. We do not find that the chancellor based the amount of child support on Marin’s wife’s income.

IV Marin’s and Stewart’s Residential Statuses

¶ 16. Marin also asserts that the chancellor’s findings are erroneous because they penalize him for living with his mother[1] and do not penalize Stewart, who lives with her parents as well. The chancellor reasoned that because Marin was living with his mother and not paying rent, he had virtually no expenses, while Stewart, even though she too was living with her parents, had the daily expenses required to care for a child, including daycare.
¶ 17. Marin further asserts that the chancellor should have allowed him to testify during the final hearing about his change in residential status, as he had moved out of his mother’s house by the time of the final hearing.[2] He claims that as a result of the move, he was incurring additional expenses, which amounted to a material change in circumstances. Marin offers no authority to support his assertion that the chancellor erred in declining to consider his testimony. Consequently, he is procedurally barred from making this argument. See Edmonds v. Edmonds, 935 So.2d 980, 988 (¶ 22) (Miss.2006). Procedural bar notwithstanding, we briefly address this issue. The chancellor informed Marin that he was required to file a petition requesting a modification in child support if there was a material change in circumstances. We do not understand how Marin could file a petition for modification of child support, however, as the chancellor had not yet issued a final order. We acknowledge that, at one point, the chancellor stated that he was deviating from the guidelines because Marin lived at home and basically paid nothing. However, immediately after making that statement, the chancellor stated the following:
And the guidelines say you may deviate from the guidelines if you have reasons to do so. And what I find is that [Stewart] is a single mother who has nobody *159 to rely on to take care of that child and she has to put the child in daycare and she has a great deal of expense with that, and [Marin] has virtually no other legitimate expenses other than basic food and very little more and he has an awful lot of help. So I would say I am going to go up from the guidelines and deviate from the guidelines. So I would set the basic child support at instead of 14 percent of his adjusted gross income to 25 percent of his adjusted gross income.
While the minimal living expenses that Marin enjoyed changed after he moved out of his mother’s home, we cannot find that the chancellor erred in not allowing him to give additional testimony regarding his increase in living expenses, as we do not find that the chancellor’s decision to deviate upward from the guidelines was based solely on Marin’s minimal living expenses.
¶ 18. Finding no merit to any of the issues raised by Marin, we affirm the judgment of the chancellor.
¶ 19. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ, CONCUR. JAMES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. As discussed later in the opinion, by the time of the final hearing, Marin had moved out of his mother's home.

. During the initial hearing, Marin was represented by counsel. However, during the final hearing, he was pro se.